UNITED STATES of America

v.

**Renee T. JACKSON, Defendant.**

**Crim. No. 90–333–01 SS.**

United States District Court,
District of Columbia.

Feb. 12, 1991.

William Barber, Washington, D.C., for defendant.

J. Jiyoung Bong, Asst. U.S. Atty., Washington, D.C., for U.S.

## SENTENCING MEMORANDUM

SPORKIN, District Judge.

On January 31, 1991, Renee T. Jackson came before the Court for sentencing. I sentenced Ms. Jackson to a term of imprisonment of 36 months. Pursuant to the Sentencing Reform Act of 1984, I stated for the record the reasons for the sentence I imposed. This sentencing memorandum amplifies those reasons.

Ms. Jackson was indicted on one count of possession with the intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. § 841. She pled guilty to the lesser included offense of possession with the intent to distribute a detectable amount of cocaine base. The total amount of cocaine base found on Ms. Jackson was 5.067 grams. According to the Sentence Reform Act guidelines, this amount of narcotics merits an offense level of 26. The proba-

tion office found that Ms. Jackson has fully accepted responsibility for her offense, and I accept this finding based upon the testimony of Ms. Jackson at her sentencing hearing and upon her answers to questions propounded by the Court at earlier appearances. Based upon this finding, Ms. Jackson is entitled to a reduction of two points in her offense level, bringing the offense level for her crime to 24.

Ms. Jackson has one prior conviction. In 1987 she was convicted for attempted possession of cocaine and attempted possession of PCP. In the sentencing guidelines framework, Ms. Jackson has a criminal history category of I. For a defendant with an offense level of 24 and a criminal history category of I, the guidelines recommend a sentence within the range of 51 to 63 months.

■ I have decided, however, to impose a sentence below this range. I base my decision on two grounds. First, under § 3B1.2(a) of the Guidelines Manual, Ms. Jackson deserves a reduction of her sentence due to her minimal role in the offense she committed. Second, regardless of Ms. Jackson's entitlement to a § 3B1.2(a) reduction, I find that Ms. Jackson's family commitments and her lack of threat to society warrant a departure below the guideline recommendation of 51 months.

### Ms. Jackson's Role in Her Offense

Section 3B1.2 of the United States Sentencing Commission Guidelines Manual provides:

### Mitigating Role

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

The Application Notes to this provision state that

Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of

those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope or structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

I find that on the facts of this case Ms. Jackson qualifies for a 4 point reduction in offense level due to her minimal role in the offense. Ms. Jackson is addicted to crack cocaine. She obtained the drugs which she possessed from her dealer, a man she described to the police and identified as "James." Ms. Jackson does not know James' last name. She had purchased crack from James on numerous occasions.

Some time before her arrest, James approached Ms. Jackson with a proposal for her to sell crack for him. He gave her a quantity of crack, packaged in several plastic bags, with directions for her to sell it. Ms. Jackson's arrangement with James was that she was to sell as much of the crack as needed to realize $1,000. After turning this sum over to James, Ms. Jackson would be permitted to keep any remaining crack.

Ms. Jackson's criminal activity represents the most minimal of roles in a larger concerted criminal enterprise. She occupied, briefly, a position on the very bottom rung of the drug distribution ladder. It is obvious, not only from common sense but from Ms. Jackson's testimony, that someone supplied her with the drugs she sold— someone who distributes drugs much more widely than Ms. Jackson ever did or ever could. Ms. Jackson was essentially homeless. She had no steady residence but rather moved constantly among her friends' apartments, her family members' apartments, and the street. She has not been employed in the recent past, and because her drug habit has so interfered with her ability to function, she has failed to apply for public assistance and thus receives none. Ms. Jackson is a person of very limited education, skills, and resources, and she is crippled by addiction. I have seen

Ms. Jackson in court and I have heard her testimony. I find that Ms. Jackson was capable of only a minimal role in a larger enterprise, and that she is culpable only for such a limited role.

Ms. Jackson's minimal role in the drug distribution enterprise is evidenced by the fact that she never had any hope or intention of receiving payment in currency for her efforts. Her sole remuneration was to be the left-over drugs.[1] Ms. Jackson testified that this drug selling transaction with James was the first she had ever engaged in. She testified that prior to her arrangement with James, while she had been addicted to drugs, she had never before sold drugs. She testified that she agreed to sell drugs on James' behalf only in order to support her own drug habit. It is also relevant, as the guideline Application Notes suggest, that Ms. Jackson "lack[ed] ... knowledge or understanding of the scope or structure of the enterprise [in which she was involved] and of the activities of others" who were involved in that enterprise. Plainly, Ms. Jackson was far removed from those at the top of the drug network.

The government has argued that it would be inappropriate for this Court to reduce Ms. Jackson's sentence pursuant to § 3B1.2 simply because she was a low-level drug courier or dealer. The government has relied on two cases from other Circuits in support of its position. *United States v. Williams*, 890 F.2d 102 (8th Cir.1989) (per curiam); *United States v. Rojas*, 868 F.2d 1409 (5th Cir.1989) (Higginbotham, J.). These cases, however, do not hold that couriers and street-level dealers may never be considered to be minimal participants in a criminal enterprise. They simply hold that such defendants are not automatically entitled to a § 3B1.2 reduction.

In *Williams*, the district court had refused to award the defendant a reduction. The Court of Appeals upheld this determination:

A defendant's status as a courier does not necessarily mean he is less culpable

---

**1.** I note in this connection that based on Ms. Jackson's testimony it appears that the drugs given to her by James may not have had a street value of even $1,000. If so, Ms. Jackson was presumably acting purely in the hopes of currying favor with her pusher.

than other participants in a drug operation. Although there is evidence to suggest that others may have been paying Williams to carry drugs, the record reveals no evidence establishing that Williams was any less culpable than those unidentified actors whose actual roles were unknown. Therefore, we find no basis upon which to conclude that the district court erred in denying the reduction.

890 F.2d at 104 (citations omitted). Similarly, the *Rojas* Court also declined to overturn a district court's determination:

Minor participant status is not a legal conclusion derived by applying the guidelines to factual determinations. It is itself a factual determination, and enjoys the protection of the "clearly erroneous" standard. That factual determination turns upon culpability, not courier status.... [A] defendant may be a courier without being substantially less culpable than the average participant. Culpability is a determination requiring sensitivity to a variety of factors.

868 F.2d at 1410.

■ These cases make it clear that the trial judge has discretion to examine the facts of the case at hand and to determine the defendant's culpability relative to other participants in the crime, whether or not these other participants were indicted along with the defendant. Indeed, the Application Notes to the "role in the offense" section of the Guidelines define a "participant" as "a person who is criminally responsible for the commission of the offense, *but need not have been convicted.*" U.S.S.G. § 3B1.1 (Application Note 1) (emphasis added). *Williams* and *Rojas* certainly envision that, upon an appropriate factual determination, a district court can, and should, take account of a defendant's place in a larger drug distribution network.

■ The government's position, in essence, is that the existence of a larger network is immaterial to Ms. Jackson's sentence because she was indicted simply for possession with the intent to distribute, a crime which she carried out entirely on her own and for which she needed no accomplices or co-conspirators. The government's presentation of Ms. Jackson's crime, however, does not preclude the Court from looking beyond the indictment to the actual pattern of criminal conduct in which Ms. Jackson was involved. *Cf. United States v. Williams*, 891 F.2d 921, 925 (D.C.Cir. 1989) ("Throughout the statutory scheme, the Guidelines distinguish between relevant *conduct* on the one hand, and the *offense* of conviction on the other.") Congress could not have intended for the prosecutor to have the power not only to decide whom to indict, but also to constrain the Court's sentencing discretion. If the government had indicted not only Ms. Jackson, but also James, and his supplier, Ms. Jackson's minimal role in the drug enterprise would be plain.

I do not know what efforts, if any, the government has made to bring to justice James, or any of the drug kingpins who are ultimately responsible for Ms. Jackson's possession of the drugs. While it is incumbent upon the government to do everything it can to rid our community of street-level drug dealers, it is equally if not more important that the government direct its attention and resources to apprehending the suppliers of these street-level dealers. Too often, because of either a lack of resources or a difficulty in infiltrating drug distribution networks, this Court and other district courts find themselves sentencing underlings to substantial sentences while the drug overlords remain at large. Unless the government is able and willing to go after drug suppliers, the nation's prisons will be filled with the Renee Jacksons of the world, at tremendous costs and with very little impact on the drug trade. If progress is to be made in the war against drugs, the government must devote the resources necessary to pursue those who operate and manage drug enterprises, rather than being content to merely apprehend and punish the addict who makes street sales to support his or her habit.

In this case, and unfortunately in too many others, the government seeks to justify a severe and disproportionate sentence by pointing to the need to fight the drug

war. I will not treat the Renee Jacksons of the nation as stand-ins for drug kingpins simply because those genuinely deserving of harsh sentences are not before me. The drug war simply cannot be won on the backs of Renee Jackson and others like her.

I find that I do have discretion under the guidelines to determine that Ms. Jackson played a minimal role in a larger criminal activity, and that the facts of this case support such a determination. Accordingly, I find that Ms. Jackson's offense level should be reduced by 4 points, to 20. Based on this offense level, the guideline recommendation for Ms. Jackson's sentence is 33–41 months. I believe that Ms. Jackson's crime was significant, and that she deserves a sentence somewhat above the bottom of this range. I believe that a sentence of 36 months of imprisonment is appropriate to Ms. Jackson's level of culpability.

### Departing Downward

As an alternative ground for Ms. Jackson's sentence, I find that a downward departure from the guideline range of 51 to 63 months is appropriate. The guidelines do not adequately take account of the ability of the trial judge to evaluate the culpability of the defendant, her similarity or dissimilarity to other people convicted for the same crime, her family responsibilities, and the threat she poses to the community.

Ms. Jackson has two children, ages 1 and 6.[2] She receives no financial support from their fathers, and the fathers have assumed no significant parental responsibilities. The longer Ms. Jackson is incarcerated, the longer these children will be without their mother.

As noted above, prior to her arrest Ms. Jackson was homeless and was entirely without means of support. These circumstances do not make Ms. Jackson less culpable for her actions. They do, however, indicate that Ms. Jackson does not pose a severe danger to the community. She does not have a connection in Columbia from whom she imports cocaine, and she was not involved in large shipments of drugs. On the contrary, Ms. Jackson is an addict who needs treatment, and who needs to learn a skill so that she can become a productive member of society and at some point be able to care for her two children, who now are parentless.

Finally, I reject the government's position that the guidelines have eliminated entirely the sentencing judge's discretion. I note in this connection that the crime to which Ms. Jackson pled guilty carries with it no mandatory minimum sentence. My sentencing decision does not violate the will of Congress, although the United States Attorney's office strenuously opposes it. But the role of the sentencing judge is precisely to exercise independent judgment. The prosecutor has tremendous discretion to decide whom to indict and what crimes to indict. Through the plea bargaining system, the prosecutor has the ability to significantly influence defendant's plea decisions. The essence of our system of separated powers is that the judiciary has some discretion to counterbalance the prosecutor's awesome power. *Cf. United States v. Roberts*, 726 F.Supp. 1359, 1367 (D.D.C. 1989) (Greene, J.) ("our constitutional system of due process [cannot] tolerate[ ] a situation where the key sentencing responsibility is exercised not by a judge but by the prosecuting attorney"). I do not believe that the intent of the guidelines was to force judges to impose sentences that they can see are plainly inappropriate, simply because the prosecutor demands such a sentence. *Cf.*

I am bound to implement the law. I am also bound to apply the law to the case before me, and to bring the requisite compassion to bear in meting out a punishment that fits the crime. *Cf.* R. Cover, Justice Accused (1975) (describing judicial application of the Fugitive Slave Act). If the guideline range for Ms. Jackson is 51–63

---

**2.** In addition, Ms. Jackson, a single mother, was pregnant at the time of her arrest. She suffered a miscarriage while incarcerated.

months, I find that a departure is warranted. I believe that a sentence of 51 months is unduly harsh for a homeless mother, addicted to drugs, with two small children, and who was as much a victim of people higher up in the drug distribution chain as she was a perpetrator. I cannot predict that Ms. Jackson will be able to put her life in order when she gets out of prison, but I am convinced that no useful purpose would be served, and much waste incurred, by a lengthy sentence.[3] A lesser sentence will give Ms. Jackson an opportunity for rehabilitation and will allow her to re-enter society and to return to her children. At the same time, I find that Ms. Jackson did knowingly engage in criminal activity, and that she deserves more than a nominal sentence.

I therefore have imposed a sentence of three years in prison, followed by three years of supervised release. I am convinced that is an adequate and proportionate punishment for the magnitude of Ms. Jackson's crime.

---

**3.** I am also concerned about the burden imposed on taxpayers when people like Renee Jackson are incarcerated at a cost in excess of $20,000 a year for periods that can exceed 5 years.