UNITED STATES of America,

v.

Caressa CHAMBERS, Defendant.

Crim. No. 91–107.

United States District Court, District of Columbia.

May 4, 1995.

---

4. *See Lloyd v. FDIC.* 22 F.3d 335, 338 (1994).

Reita Pauline Pendry, Federal Public Defender for D.C., Washington, DC, for defendant Caressa Chambers.

David Lloyd Smith, U.S. Attys. Office, Washington, DC, for U.S.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This matter comes before the Court on the sentencing of Defendant Chambers. On August 20, 1991, Defendant Chambers pleaded guilty to Count Two of the indictment, possession with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). The statutory minimum for this crime is 10 years and Defendant's guideline imprisonment range was 121 to 151 months. As part of her guilty plea, Defendant was allowed to reside in a halfway house pending sentencing. Defendant left the halfway house without permission and failed to appear on October 22, 1992 for sentencing. A bench warrant was issued for her arrest.

Defendant was not arrested until December 28, 1994. On March 22, 1995, Defendant was permitted to withdraw her guilty plea to Count Two and enter a plea of guilty to Count One, maintaining a house for the distribution of narcotics in violation of 21 U.S.C. § 856(a). This offense does not carry a statutory minimum. However, Defendant's sentencing guideline range is now 188 to 235 months.[1]

## BACKGROUND FACTS

■ On February 13, 1991, members of the Metropolitan Police Department, Rapid Deployment Unit, executed a search warrant at 2728 Langston Place, S.E., Apartment # T–1, Washington, D.C., the residence of Ms. Chambers. Seventy-four grams of crack cocaine were recovered from the apartment. Ms. Chambers was arrested and shortly thereafter gave a written statement to the police in which she admitted that a male friend of the family had stored crack cocaine in her apartment and had been selling it in the hallway outside her apartment for approximately a month before her arrest. She told police that her friend never gave her money or drugs for storing the drugs in her apartment.

The government never brought a case against the friend, the main perpetrator in this case. The individual who is alleged to have actually sold the drugs to addicts and reaped the monetary benefits of the sales remains a free man today. The thirty-four year old woman, a single mother whom a doctor has found to be borderline mentally-retarded, faces 188 to 235 months in prison for allowing the drugs to be stored in her apartment by a family "friend."

## ANALYSIS AND DECISION

■ This case represents another instance where the Sentencing Guidelines bear no relation to the gravity of the crime committed, let alone a relation to the actual individual being sentenced. For a sentence to be just and equitable and for the sentence to serve the public interest, a sentencing court has the responsibility to not only sentence the crime, but also to look at the individual being sentenced. No violence was involved in this offense. Justice is not served by placing a 34 year old mother of two children, ages 9 and 12, in jail for over fifteen years for allowing drugs to be stored in her apartment, while the main perpetrator is allowed to go free.

While the Court recognizes that any violation of the law is serious, especially if it is related to and aids and abets the drug trade which is devastating our country, the Court also understands that society is not served by sentencing this Defendant to a guideline sentence of 188 months. The cost of confinement has been estimated to be approximately $30,000 a year. This means that the public will be saddled with a cost of some $465,000 if Defendant is given a sentence even at the low end of the guideline range. Regardless of the fairness of a given sentence to the

---

1. In her plea agreement to Count One, Defendant agrees that the Sentencing Guideline range that applies to her is 188 to 235 months.

Defendant herself, the threat to society posed by this individual certainly does not justify such a burden to the taxpayers.

Despite the fact that this guideline range is so clearly overinflated, this Court must nevertheless justify its decision to sentence the Defendant below the guideline range of 188 to 235 months by finding that specific grounds for a downward departure exist. The Court finds that two well-established grounds for a downward departure exist in this case.

The first ground is that Defendant's "diminished capacity" contributed to the commission of the instant offense. Federal Sentencing Guideline Section 5K2.13 (diminished capacity) provides,

> [i]f the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13 (1994). Dr. Barbara Jones, whom defense counsel engaged to evaluate Ms. Chambers, diagnosed Ms. Chambers as functioning at the borderline mental defective level of intelligence and as suffering some degree of organic brain dysfunction. The government does not dispute that Defendant has diminished capacity.

The government also does not dispute that Defendant committed a "non-violent offense." Nor has the government suggested that Defendant's criminal history indicates a need for a long period of incarceration to protect the public.

As for the "linkage" element, the Court finds that Defendant's reduced mental capacity contributed to the commission of the offense. Doctor Jones reported that Defendant is "significantly impaired in the area of executive functioning" and it is "unclear as to what extent she is really capable of exercising sound judgment." As an example, the Doctor stated that "she [Defendant] might know that a particular course of action would affect her adversely and yet not be able to formulate and maintain an alternative course of action over an extended period of time without external supports." Here, a gentleman friend exerted his will upon a woman who is borderline retarded. Given that she was attempting to raise two children on her own, and by all accounts was a devoted mother,[2] her diminished capacity must have contributed significantly to her allowing such drug activity to occur within her household. Accordingly, a significant downward departure is warranted even in the face of the war on drugs. *See, e.g., United States v. Speight,* 726 F.Supp. 861 (D.D.C.1989) (departing downward in drug case by over one-hundred months to mandatory minimum based on diminished capacity).

The second ground upon which Defendant is entitled to a downward departure is extraordinary family circumstances. Although Section 5H1.6 of the Guidelines states that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines,"[3] courts have recognized that extraordinary family circumstances can warrant a downward departure.[4] "The United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." *United States v. Johnson,* 964 F.2d 124, 125 (2nd Cir.1992) (upheld downward departure based on extraordinary family circumstances where defendant was solely responsible for upbringing of her three children, including an infant, and the young child of an institutionalized daughter).

In this case, extraordinary family circumstances are presented. The Defendant is a single mother with two children, ages 12 and

---

2. See, *infra,* p. 15.

3. U.S.S.G. § 5H1.6 (1994).

4. *See, e.g., United States v. Rivera,* 994 F.2d 942, 953–54 (1st Cir.1993); *United States v. Johnson,* 964 F.2d 124, 129 (2nd Cir.1992); *United States v. Alba,* 933 F.2d 1117, 1122 (2nd Cir.1991); *United States v. Pena,* 930 F.2d 1486, 1494–95 (10th Cir.1991); *United States v. Jackson,* 756 F.Supp. 23, 27–28 (D.C.C.1991) (Sporkin, J.)

9. Defendant is the primary care provider. The children's father rarely sees them and provides virtually no financial support.

Numerous letters to the court from friends and family members, including her children, demonstrate that Defendant is a devoted and caring mother who has built a strong and lasting relationship with her children. Incarcerating Defendant for over 15 years would deprive the children of their sole parent during their formative teenage years. That children need supportive and loving parents to avoid the perils of life is without question.

While these family circumstances do not decrease the Defendant's culpability for her crime, they nevertheless play a role in the Court's consideration on sentencing. Causing the needless suffering of young, innocent children does not promote the ends of justice.

In sentencing, the Court must take into account the totality of the circumstances. Based on her diminished capacity and her extraordinary family circumstances, the Court hereby **ORDERS** that Defendant be sentenced to 21 months of incarceration in accordance with the Judgment that has been entered in this case.[5]

---

**5.** The Defendant's motion to continue sentencing based on the Sentencing Commission's recent recommendation regarding parity in sentencing between crack and powder cocaine is **DENIED.** The Court cannot continue a sentencing based solely on the premise that perhaps the law will change.