**UNITED STATES of America**

v.

**William CABELL.**

**Crim. No. 94–236 (CRR).**

United States District Court, District of Columbia.

June 16, 1995.

Edward G. Burley, Asst. U.S. Atty. for District of Columbia, with whom Eric H. Holder, U.S. Atty. for District of Columbia, was on the papers for Government.

Santha Sonenberg, Asst. Federal Public Defender, with whom A.J. Kramer, Federal Public Defender for District of Columbia, was on the papers for defendant.

## MEMORANDUM OPINION SETTING FORTH FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO THE SENTENCE OF WILLIAM CABELL

CHARLES R. RICHEY, District Judge.

This Memorandum shall constitute the Court's findings of fact and conclusions of law with respect to the sentence of William Cabell to sixty months imprisonment, to be followed by a supervised release term of 5 years thereafter together with a special assessment of $50.00 due and payable within 6 months of June 15, 1995.

## I. BACKGROUND

The Defendant in the above-entitled case is a 43 year old high-school graduate from Mount Vernon, New York. On May 24, 1994 he was arrested at Union Station in Washington, D.C after detectives found drug paraphernalia and narcotics in his possession. The Defendant had received $300.00 for acting as a courier to transfer the drugs involved from New York to North Carolina. Upon his arrest he stated that he did this to support his heroin addiction. In this case, the drugs found on the Defendant's possession after analysis by the Drug Enforcement Administration laboratory were found to contain 249.2 grams of cocaine base, with a purity level of 72%, and 0.66 grams of heroin, with a purity level of 84%.

The Probation Office converted the two drugs found to a marijuana equivalent even though it involved heroin and cocaine base. This leads to a base level offense of 34.

The Defendant began using drugs at age 16 and has been using the substance for over 27 years and has, apparently, been participating in a methadone treatment program in Mount Vernon, New York. The Defendant has also a minimal employment record and after his prompt plea of Guilty to unlawful possession with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), following his arrest in this case, he endeavored to cooperate with the United States to provide substantial assistance in accordance with the requirements of 18 U.S.C. § 3553(e) and Chapter 5K1.1 of the United States Sentencing Commission Guidelines. The Defendant argues that he complied with the mandate of the statute and Chapter 5 of the Guidelines and the Government disagrees.

As a result of the failure of the Government to agree that the Defendant had provided the Government with all the information at his disposal qualifying him for the substantial assistance reduction, his Counsel arranged for a polygraph examination, the results of which were admitted into evidence before the Court on May 19, 1995. No evidence regarding its conclusions was presented by the Government at such Hearing. The Court makes the following findings of fact by a preponderance of evidence. *See* USSG § 6A1.3 Commentary.

## II. DISCUSSION

**A. THE COURT FINDS THAT THE STATUTORY MANDATORY MINIMUM IS INAPPLICABLE BECAUSE THE DEFENDANT QUALIFIES FOR THE SAFETY VALVE PROVISION.**

For the Court to impose a Guideline sentence below the mandatory minimum term of imprisonment of 108 to 135 months for the offense to which the Defendant has pleaded, the Defendant must satisfy the "safety valve" provision of § 5C1.2 as set forth in 18 U.S.C. § 3553(f)(1)–(5). Of the five criteria set forth in 18 U.S.C. § 3553(f), the Government does not dispute that Defendant meets the first four criteria: (1) the Defendant has only 1 criminal history point; (2) the Defendant did not use violence or possess a weapon in this offense; (3) the Defendant did not cause a known death or serious injury through this offense, and; (4) the Defendant was not classified as a leader under the Guidelines or

engaging in a continuing criminal enterprise. (Govt.'s Sent.Mem. at 3–4).

However, the Government and the Defendant disagree as to whether the Defendant meets the fifth requirement, that of truthfully providing information about the offense. The Court concludes that the Defendant does meet such requirement.

■ With respect to the fifth criterion set forth in 18 U.S.C. § 3553(f)(1)–(5), the determination as to whether a " 'defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or of a common plan' ... is to be made by the Court." *United States v. Aristizabal,* 1994 WL 689089 (S.D.N.Y. December 8, 1994) (quoting U.S. Sent.Guidelines Sec. 5C1.2); *accord United States v. Buffington,* 879 F.Supp. 1220, 1222 (N.D.Ga. 1995). On May 16, 1995, the Defendant was interviewed by polygraph examiner Walter F. Atwood. At that time, the Defendant indicated that he had been truthful with the police and that he was not withholding any information regarding this case. (Report of Polygraph Exam. of Def. by Walter F. Atwood on May 16, 1995). The results of his polygraph test indicate that Mr. Cabell successfully passed the polygraph examination. The examination revealed that he has provided law enforcement agents with truthful information and that he was not withholding any information regarding this case. (Report of Polygraph Exam. of Def. by Walter F. Atwood on May 16, 1995). Accordingly, the Court finds that the Defendant is, and was, truthful in providing all the information at his disposal.

The polygraph examination indicated Plaintiff's truthfulness. The Government does not dispute the satisfaction of the other criteria, namely that the Defendant has no more than 1 criminal history point, that the crime herein did not involve the use of violence or a firearm and did not result in death or serious bodily injury because he was not an organizer, leader, manager, or supervisor of others in the crime or engaged in a continuing criminal enterprise.

It should be noted that Section 3553(f) was enacted in 1994 to limit the application of statutory mandatory minimum sentences in cases just like this. Thus, the Court finds that the Defendant meets the criteria for the "safety valve" provision of 18 U.S.C. § 3553(f)(1)–(5) as set forth in § 5C1.2, thereby qualifying the Defendant for a sentence below the mandatory minimum. Accordingly, the Court is not constrained by the ten-year mandatory minimum and the base offense level is 34 under the Sentencing Guidelines.

**B. THE COURT FINDS THAT THE DEFENDANT IS ENTITLED TO A ADJUSTMENT UNDER USSG § 3E1.1(a) AND § 3E1.1(b) BECAUSE OF HIS FULL ACCEPTANCE OF RESPONSIBILITY.**

Under USSG § 3E1.1(a) the Court may decrease a defendant's offense level by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). Because the Court finds that the Defendant has fully accepted responsibility for his offense, a two level adjustment is warranted. After application of USSG § 3E1.1(a), the Defendant's offense level is therefore 32.

■ Under USSG § 3E1.1(b), a defendant who qualifies for an adjustment under § 3E1.1(a), whose offense level determined prior to the operation of § 3E1.1(a) is 16 or greater, and who has

assisted authorities in the investigation or prosecution of his own misconduct by [either] (1) timely providing complete information to the government concerning his involvement in the offense; or (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

is eligible for an additional adjustment of one level. USSG § 3E1.1(b)(1), (2). Because the Court finds that the Defendant notified authorities of his intention to enter a plea at a sufficiently early point in the process that the government could avoid preparing for trial and the Court could schedule its calendar

efficiently, an additional one level adjustment is warranted. After application of USSG § 3E1.1(b)(2), the Defendant's offense level is therefore 31.

### C. THE COURT FINDS THAT THE DEFENDANT IS ENTITLED TO A DEPARTURE UNDER USSG § 5K2.0 BECAUSE THE TOTALITY OF CIRCUMSTANCES INDICATE THAT THERE EXIST MITIGATING CIRCUMSTANCES OF A DEGREE NOT ADEQUATELY TAKEN INTO CONSIDERATION BY THE SENTENCING COMMISSION IN FORMULATING THE GUIDELINES.

■ Under USSG § 5K2.0, the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

USSG § 5K2.0. The Guidelines further note that "[c]ircumstances that may warrant departure from the guidelines pursuant to this provision cannot, by there very nature, be comprehensively listed and analyzed in advance." *Id.* "The controlling decision as to whether and to what extent departure is warranted can only be made by the courts." *Id.* And in sentencing a defendant, a Court is to consider the totality of the circumstances. *United States v. Dyce,* 874 F.Supp. 1 (D.D.C.1994); *see* U.S. Sent.Comm., *Guidelines Manual,* § 5K2.0; 18 U.S.C. § 3553(b).

■ Courts have departed downward based on a defendant's family circumstances. *See, e.g., United States v. Johnson,* 964 F.2d 124, 129 (2d. Cir.1992) (extraordinary family circumstances were valid reason for thirteen-level downward departure); *United States v. Alba,* 933 F.2d 1117 (2d Cir.1991) (Noting the special situation of a "close-knit family whose stability depends on [the defendant's] continued presence," and letting stand the sentencing court's finding that "incarceration in accordance with the Guidelines might well re-

sult in the destruction of an otherwise strong family unit" and its conclusion "that these circumstances were sufficiently extraordinary in this case to support a downward departure."); *see also, United States v. Jackson,* 756 F.Supp. 23, 27 (D.D.C.1991). Nevertheless, a downward departure based on family circumstances requires a showing that the circumstances are "extraordinary." *See* USSG § 5H1.6 policy statement (Family responsibilities "are not ordinarily relevant."); *Johnson,* 964 F.2d at 129 ("Section 5H1.6's phrasing confirms the Commission's understanding that ordinary family circumstances do not justify departure, but *extraordinary* family circumstances may."); *United States v. Sharpsteen,* 913 F.2d 59, 63 (2d Cir.1990) ("The clear implication of section 5H1.6 is that if the court finds that the circumstances related to family ties and relationships are extraordinary, it is not precluded as a matter of law from taking them into account in making a downward departure."). The Defendant requests a downward departure due to his extraordinary family circumstances. The government objects.

■ Specifically, the Defendant, a mere courier in a drug transaction, argues that a downward departure is necessary due to his need of having to care for his recently deceased sister's children. (Def.'s Mem. In Aid of Sent. at 10–11). The Defendant's sister died of kidney failure on December 22, 1994. The Defendant's brother died of a heart attack in 1991. Thus, of his parents' three children, the Defendant is the only surviving child. The Defendant's sister was survived by a twelve year old daughter and an eight year old son who are currently living with their maternal grandmother, who is seventy-three years old and suffering from cancer and a weakened heart due to a bout with rheumatic fever.

The Court finds that a seven-level downward departure based upon the Defendant's extraordinary family circumstances is warranted. As a result of his sister's death and in light of his mother's illness, the Defendant, who previously lived with his niece and nephew prior to his incarceration last May, is needed to care for his sister's children. The rationale for such departure in not that the

Defendant's family circumstances decrease his culpability, but that the Court is reluctant to wreak further destruction on the Defendant's family. The departure is not made on behalf of the Defendant himself, but on behalf of his family. *Johnson*, 964 F.2d at 129; *see Alba*, (departure from 41–51 months for two kilos of cocaine to six months in a halfway house and two years supervised release based on family circumstances); *United States v. Pena*, 930 F.2d 1486, 1495 (10th Cir.1991) (departure from guideline range of 27–33 months to five years probation with six months in community treatment center based on family circumstances).

### D. THE COURT FINDS THAT THE DEFENDANT IS NOT ENTITLED TO AN ADJUSTMENT UNDER USSG § 3b1.2 OR A DEPARTURE UNDER USSG § 5K2.0 FOR BEING A MINIMAL OR MINOR PARTICIPANT.

 Under USSG § 3B1.2(a), a court may decrease a defendant's offense level by four levels "[i]f the defendant was a minimal participant in any criminal activity." USSG § 3B1.2(a). Under USSG § 3B1.2(b), a court may decrease a defendant's offense level by four levels "[i]f the defendant was a minor participant in any criminal activity." USSG § 3B1.2(b). However, because the Defendant's offense of conviction does not involve any group-related conduct, nor does the relevant conduct for which the Defendant could have been found criminally responsible necessarily involve group-related conduct, he cannot avail himself of USSG § 3B1.2(a) or (b). Further, because the extent of a defendant's participation in a crime is an aggravating or mitigating circumstance of a kind adequately taken into consideration by the Sentencing Commission in formulating the guidelines, a departure on the basis of the Defendant's role as a courier is not warranted under USSG § 5K2.0.

As the commentary to § 3B1.2 notes, "[s]ubsection (a) applies to a defendant who plays a minimal role in concerted activity." Commentary, Application Note 1. "It is intended," the Commentary continues, "to cover defendants who are plainly among the least culpable of those involved in the con-

duct of a group." *Id.* Section 3B1.2(b) is similarly limited. Application of each, the Guidelines Commentary notes, mandates a fact-based inquiry into the relative seriousness of the defendant's offense of conviction compared to his actual criminal conduct. *See United States v. Demers*, 13 F.3d 1381, 1385 (9th Cir.1994).

 However, the law in this Circuit is clear that a narcotics courier cannot receive an adjustment for minimal or minor participation in the offense unless the offense or relevant conduct referred to is in the nature of a larger joint enterprise, such as a conspiracy. *United States v. Olibrices*, 979 F.2d 1557, 1559 (D.C.Cir.1992) (defendant not entitled to have sentence reduced for minimal role in larger conspiracy, for which she was not charged, when larger offense was not taken into account in setting base level for sentence); *United States v. Williams*, 891 F.2d 921, 926 (D.C.Cir.1989) (a § 3B1.1 adjustment can "only be considered when the defendant has a role in the offense for which 'relative responsibility' can be allocated."); *see also United States v. Bierley*, 922 F.2d 1061, 1065 (3rd Cir.1990) (noting "threshold requirement of more than one criminally responsible participant for any adjustment in offense level under §§ 3B1.1 or 3B1.2, whether the departure is upward or downward, despite the absence of an explicit statement to that effect"). Nor is a defendant's status as a courier, by itself, enough to support that he was a "minor participant." *United States v. Caballero*, 936 F.2d 1292, 1299 (D.C.Cir.1991). Rather, before it may find that a defendant was a minor participant in the offense, the Court must find, at a minimum, and *inter alia*, that the "relevant conduct" for which the defendant would, within the meaning of section 1B1.3(a)(1) be otherwise accountable, involved more than one participant.

Because the Defendant was merely a narcotics courier, the issue is whether he is therefore entitled to an adjustment for being a minimal participant in a larger narcotics operation. The Defendant is admittedly faced with a Hobson's choice. He pleaded guilty to possession with intent to distribute cocaine base, and the relevant conduct for

which he is being held accountable includes only that amount which he was carrying on his person. Such amount was the basis for establishing the Defendant's offense level. The Defendant does not, however, admit to participation in a conspiracy nor is he charged with such. Admission of participation in a conspiracy could, of course, have increased the Defendant's exposure under the Guidelines, depending, *inter alia*, on the amount of narcotics involved in such a conspiracy. Instead, the Defendant's offense of conviction, possession with intent to distribute, is individual in nature.

Prior to the 1990 amendment to the Introductory Commentary to Chapter 3, Pt. B, an adjustment based on a defendant's minimal or minor participation could not be based on a defendant's role in conduct occurring beyond the offense of conviction, *see, e.g., United States v. Zweber*, 913 F.2d 705 (9th Cir. 1990). However, the new methodology prescribed by the Commission permits the Court to look not only at the defendant's role in the offense of conviction but also at his role in all related conduct for which he could have been found criminally responsible as an aider or abettor or as a conspirator. Notwithstanding this broader scope of inquiry, the Defendant is not entitled to an adjustment under either § 3B1.2(a) or (b).

 *Olibrices, supra*, is apposite. In that case the United States Court of Appeals for the District of Columbia Circuit held that a defendant is not entitled to an adjustment for being a minimal or minor participant in a larger conspiracy, for which he or she was not charged, when the larger offense was not taken into account in setting the base level for the sentence. 979 F.2d at 1559. The Defendant has not faced any potential liability as an aider or abettor or a conspirator. Relevant conduct is pertinent to an adjustment under § 3B1.2(a) or (b) only if it is also used to set the offense level. *Olibrices*, 979 F.2d at 1559–60; *accord United States v. Neal*, 36 F.3d 1190, 1211 (1st Cir.1994) (defendant did not have minor role in offenses of conviction on which sentences were based); *United States v. Gomez*, 31 F.3d 28, 31 (2d Cir.1994) (adjustment properly denied for alleged minor role in related conduct not used

in sentencing); *United States v. Marino*, 29 F.3d 76, 78 (2d Cir.1994) (same); *United States v. Lucht*, 18 F.3d 541, 555–56 (8th Cir.1994) (court properly denied adjustment for minor role in larger conspiracy where defendants pleaded guilty to less serious offense). The upshot of this is that the Defendant cannot be a minimal participant, for the purposes of garnering an adjustment, in a one-man operation, which is effectively the factual predicate or relevant conduct underlying his offense of conviction. *See Caballero*, 936 F.2d at 1299 (before sentencing court can find that defendant was a minor participant entitled to two-point decrease in offense level, even though his crime involved no other participant, evidence has to show that relevant conduct for which defendant would be otherwise accountable involved more than one participant and that defendant's culpability for that conduct was relatively minor compared to that of other participants); *cf. United States v. Lillard*, 929 F.2d 500, 503 (9th Cir.1991) ("A defendant who is part of a large drug conspiracy but convicted only of possession, should not be rewarded for his participation in the conspiracy by receiving a lighter sentence than one who was convicted of possession but had no connections to a larger scheme."). Accordingly, the Court finds that the Defendant is not entitled to an adjustment thereunder.

Nor is the Defendant entitled to a departure under USSG § 5K2.0 because of his courier role. As discussed above, § 5K2.0 allows for a departure when the Court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." USSG § 5K2.0.

The "authority for an adjustment does not inevitably carry the negative implication that facts that fail to qualify for the adjustment [under Chapter 3] are ineligible for a departure." *United States v. Speenburgh*, 990 F.2d 72, 76 (2d Cir.1993). And other courts have held that a defendant who is ineligible for an adjustment based upon his or her role in the offense *may* still be eligible for a

departure under § 5K2.0. *See, e.g., United States v. Valdez–Gonzalez,* 957 F.2d 643, 649 (9th Cir.1992) (marginal roles in drug trade played by two defendants who acted as couriers coupled with unavailability of downward adjustment for minor role because the defendants were sole participants to which they pled guilty, presented a permissible basis for departure); *Bierley,* 922 F.2d at 1066–70 (permitting downward adjustment analogous to § 3B1.2 downward adjustment based upon defendant's role in events extending beyond the offense of conviction). However, the Court concludes that such a departure is not warranted in the instant case.

■ Sections 3B1.1 and 3B1.2 deal specifically with adjustments based upon a defendant's role relative to that of other participants in group activity. The Commentary and the caselaw on point recognize that a defendant's offense level may not be adjusted thereunder absent other "criminally responsible" participants. When the Sentencing Commission limited §§ 3B1.1 and 3B1.2 to conviction offenses committed by more than one criminally responsible participant, the Commission explicitly addressed the issue of the degree or extent of a defendant's participation. The Court cannot therefore conclude that the Defendant's role as a courier, though insufficient to merit an adjustment, somehow presents an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that mandated by the Defendant's offense of conviction. Further, the Court finds that the relative seriousness of the defendant's offense of conviction does not outweigh that of his actual criminal conduct. *See Demers,* 13 F.3d at 1385. Accordingly, the Defendant is not entitled to a departure under USSG § 5K2.0 based upon his role as a courier.

**E. THE COURT FINDS THAT A DEPARTURE UNDER USSG § 5K2.0 IS NOT WARRANTED ON THE BASIS OF THE SENTENCING COMMISSION'S RECENT VOTE.**

The Defendant has further argued that a downward departure is warranted in light of the Sentencing Commission's April 10, 1995 vote to recommend a one-to-one quantity ratio between sentences for cocaine base and cocaine hydrochloride. (Def.'s Mem. In Aid of Sent. at 8–10). The Government opposes such a departure on this basis.

According to the Defendant, on February 28, 1995, the Sentencing Commission issued a special report to Congress in which it "strongly recommends" against the 100–to–1 cocaine base/powder ratio. On April 10, 1995, the Sentencing Commission voted to adopt a one-to-one ratio for the offense levels for cocaine base in relation to cocaine hydrochloride.

■ If the Court were to agree with the Defendant's argument, the Court would have to give effect to a Report or Recommendation that has not yet been acted upon by Congress, thereby causing the Court to give an advisory opinion. It is an elementary principle of law that a district court is precluded from issuing advisory opinions. *See, e.g., Muskrat v. United States,* 219 U.S. 346, 362, 31 S.Ct. 250, 256, 55 L.Ed. 246 (1911) (article III courts are precluded from giving "opinions in the nature of advice concerning legislative action. . . .") Accordingly, the Defendant is not entitled to a departure based on the Report issued by the Sentencing Commission.

**F. THE COURT FINDS THAT A DEPARTURE UNDER USSG § 5K2.0 IS NOT WARRANTED BASED ON THE DEFENDANT'S POTENTIAL FOR REHABILITATION.**

The Defendant contends that a downward departure is justified based on the Defendant's "potential for rehabilitation." (Def.'s Mem. In Aid of Sent. at 13). The Government disagrees.

■ Title 18 U.S.C. § 3553(a) sets forth the standards for imposition of a sentence. That section provides that:

The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

18 U.S.C. § 3553(a). Notably absent from the section is any mention of the term "rehabilitation." In fact, the Sentencing Reform Act of 1984 specifically "rejects imprisonment as a means of promoting rehabilitation." *Mistretta v. United States*, 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989) (citing 28 U.S.C. § 994(k)). Thus a court should not consider a defendant's potential for rehabilitation in fashioning an appropriate term of imprisonment. Therefore, in accordance with the law, the Court must reject the Defendant's rehabilitation argument and shall not depart downward on that basis.

## G. THE COURT FINDS THAT A DEPARTURE UNDER USSG § 5K2.0 IS NOT WARRANTED ON THE BASIS OF THE EIGHTH AMENDMENT.

The Defendant argues that a sentence of ten or more years in a federal prison as required by the mandatory minimum sentence would constitute cruel and unusual punishment in violation of the Eighth Amendment. (Def.'s Mem. In Aid of Sent. at 14).

 In support of his argument, the Defendant relies upon Judge Oberdorfer's decision in *United States v. Walls*, 841 F.Supp. 24 (D.D.C.1994), *appeal pending*, No. 94–3033 (D.C.Cir.). However, that case is inapplicable to the instant situation. In *Walls*, the court addressed an Eighth Amendment challenge to the sentencing disparities between crack cocaine and powder cocaine. *Id.* at 26. In contrast, the Defendant in the instant case only challenges the potential imposition of a mandatory minimum sentence of ten years. (Def.'s Mem. In Aid of Sent. at 14). Accordingly, since the instant situation is distinct from the situation before the court in *Walls*, the Defendant's Eight Amendment argument shall be rejected.

In addition, the Court observes, as indicated by the foregoing, that the Defendant has not been and will not be sentenced to ten or more years in prison, as required by the mandatory minimum sentence. Instead, the Court is sentencing the Defendant to sixty months in prison, to be followed by a supervised release term of 5 years thereafter together with a special assessment of $50.00 due and payable within 6 months of June 15, 1995. Accordingly, because the Defendant is not being sentenced to the mandatory minimum, Defendant's Eight Amendment argument based upon the rationale in *Walls* is moot.

## II. CONCLUSION

For the reasons stated above, the Court finds that a downward departure is justified because the Defendant qualifies for the "safety valve" provision of 18 U.S.C. § 3553(f), that Defendant is entitled to a two-level adjustment because he has fully accepted responsibility for his offense, that because Defendant notified authorities of his intention to enter a plea at a sufficiently early point in the process that the government could avoid preparing for trial and the Court could schedule its calendar efficiently, an additional one level adjustment is warranted, and that the totality of the circumstances warrant a seven-level departure. After application of 18 U.S.C. § 3553(f), USSG § 3E1.1(b)(1), USSG § 3E1.1(b)(2), and USSG §§ 5K2.0, Defendant's offense level is therefore 24. No further departures are warranted and the Defendant, William Cabell, is hereby sentenced to sixty months imprisonment, to be followed by a Supervised Release term of 5 years thereafter together with a Special Assessment of $50.00 due and payable within 6 months of June 15, 1995. The Court will

enter an Order of even-date herewith consistent with the foregoing Memorandum Opinion.