UNITED STATES of America,

v.

Tracy BLACKWELL, Defendant.

Crim. No. 94–301–LFO.

United States District Court,
District of Columbia.

Aug. 9, 1995.

Robert Spelke, Julie A. Grohovsky, John Cox, Asst. U.S. Attorneys, Washington, DC, for United States.

Amy Seidman, Asst. Federal Public Defender, Washington, DC, for Defendant.

## MEMORANDUM

OBERDORFER, District Judge.

On July 7, 1995, for reasons some of which were stated from the bench, defendant was sentenced to a term of fifteen months. This Memorandum is submitted in further exposition of that ruling. As will be more fully developed below, defendant faced a guideline sentence of sixty months. She moved for a downward departure on the authority of guidelines §§ 5K2.13, 5K2.0, and 5C1.2.

### I.

Defendant was arrested on July 20, 1994, at the Greyhound Bus Terminal in the District. She was returning from a one-day trip to New York with her boyfriend of one year, Frank Tucker, when a police officer found 303.2 grams of cocaine base in her backpack and $600 in cash in her purse. Defendant claims that Tucker made all the arrangements, obtained the drugs himself out of her presence, and gave them to her to carry on the trip back from New York. Tucker has not been charged in this case. Defendant pled guilty to conspiracy to possess with intent to distribute fifty grams or more of cocaine base pursuant to 18 U.S.C. § 371.

In support of her request for a downward departure, defendant has proved, by a preponderance of the evidence gleaned from the presentence report and the testimony of experts, the following facts: Defendant, a twenty-seven-year-old black woman, is the single mother of six young children. The children range in age from ten to four years old, and the youngest has eye problems and needs medical care. Five of the children presently live with defendant's mother, whose high blood pressure and heart condition make it difficult for her to continue caring for her grandchildren.

Undisputed facts stated in the presentence report disclose that defendant has no criminal history and no history of violent behavior or of drug or alcohol abuse. During the period that defendant was on release in this case, she was not rearrested and she was employed. Moreover, defendant's family members are law-abiding, stable people with no known criminal history. Defendant's mother is fifty-four years old, worked her entire life, was never on public assistance, and raised her family in the church. Defendant's two oldest brothers are employed.

The presentence report was supplemented by testimony adduced at a hearing on March 22, 1995. Dr. R. Bronson Levin, who performed a psychological evaluation of defendant, testified that defendant has an IQ of 73, which is at the bottom three percent of the population and in the range of borderline mental retardation. According to Dr. Levin, defendant has a meek and dependent personality, is easily manipulated and dominated by others, and has poor analytical abilities. Dr. Richard E. Lawrence, who evaluated defendant at the request of the probation department, agreed that defendant has a dependent personality and allows others to make decisions for her. Dr. Lawrence also confirmed that defendant is of borderline intelligence, with an IQ of 75.

### II.

The base offense level for the conspiracy to which defendant pled guilty is the same as if the object of the conspiracy had been completed. See U.S.S.G. § 2X1.1. In this case, defendant conspired to possess with intent to distribute 303.2 grams of cocaine base; the base offense level is therefore 34. See id. § 2D1.1(a)(3). With a two-point adjustment for acceptance of responsibility, the total offense level is 32. See id. § 3E1.1(a). Defendant has no known previous criminal convictions. Thus, the guideline range is 121 to 151 months.

The statutory maximum of sixty months is the appropriate sentence under the guidelines, however, because the statutory maximum is less than the minimum of the guideline range. *See id.* § 5G1.1(a). There is no statutory minimum sentence, and while it is appropriate to extrapolate from the guidelines for sentencing guidance, the guidelines do not control this case.

### III.

■■■ Defendant bears the burden of proof, by a preponderance of the evidence, with respect to whether a downward departure is warranted. *See U.S. v. Salmon,* 948 F.2d 776, 779 (D.C.Cir.1991). Defendant has met this burden and has proved that several factors support a substantial downward departure. First, defendant's palpably diminished capacity, as evidenced by expert testimony and by her own rather vacant behavior, is a relevant consideration when deciding whether to grant a downward departure. Section 5K2.13 of the guidelines allows a downward departure for diminished capacity:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13.

Expert testimony based on mental and psychological evaluations established that defendant has an IQ of no more than 75 and is at the borderline between intelligence and retardation. It was the opinion of the experts that defendant has a dependent personality and is manipulated easily by others. Defendant's mental and psychological condition made her uniquely vulnerable to Tucker's request that she carry drugs.

■■■ Second, defendant's extraordinary family circumstances warrant a downward departure. While "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guideline range," *id.* § 5H1.6, a downward departure may be appropriate where *extraordinary* family circumstances exist. *See, e.g., United States v. Rivera,* 994 F.2d 942, 948 (1st Cir.1993) (Breyer, C.J.) (remanded). It is undisputed that defendant has substantial responsibilities as a single mother to her six young children, one of whom needs medical care. Defendant's mother, who has cared for five of the six children while defendant is in custody, cannot care for them indefinitely due to serious health problems. "Causing the needless suffering of young, innocent children does not promote the ends of justice." *United States v. Chambers,* 885 F.Supp. 12, 14 (D.D.C.1995). It is therefore appropriate to consider defendant's extraordinary family circumstances when imposing a sentence.

Third, defendant's offense appears to have been a single act of aberrant behavior in an otherwise stable history. Defendant has no previous criminal history, no history of violent behavior or of drug or alcohol abuse. Defendant was not rearrested and was employed while she was on release in this case.

According to the presentence report defendant's conduct was an aberration in her family, as well. Defendant's mother has been a model citizen; she was employed all her life, never on public assistance, and she raised her family in the church. Defendant's two oldest brothers are employed. The presentence report discloses that defendant's family members do not have any known criminal history. When defendant returns to her family environment, with supervision, it is most unlikely that she would repeat her offense. These facts concerning defendant's own background and that of her family support a finding that defendant's offense was an act of aberrant behavior. *See, e.g., United States v. Peña,* 930 F.2d 1486, 1495 (10th Cir.1991).

■■■ Even if none of the foregoing considerations alone would justify a downward departure, a downward departure is appropriate under § 5K2.0 of the guidelines. In aggregate, the combination of these considerations mandates a downward departure. Guideline commentary provides:

The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case.

U.S.S.G. § 5K2.0, commentary. The combination of characteristics and circumstances in this case makes it "sufficiently atypical to warrant a sentence different from that called for under the guidelines." *Id.; see also United States v. Cook,* 938 F.2d 149, 153 (9th Cir.1991). Defendant has palpably diminished capacity, significant family responsibilities, and her offense was clearly an act of aberrant behavior. These factors together justify a substantial downward departure.

## IV.

■ Although defendant is entitled to a downward departure on the grounds elaborated above, she does not satisfy an alternate ground for a downward departure that is found in the "safety valve" provision of the guidelines, which quotes verbatim from 18 U.S.C. 3553(f). *See* U.S.S.G. § 5C1.2. This provision explicitly applies only to offenses under 21 U.S.C. § 841, 844, 846, 960, or 963, and it limits the applicability of statutory minimum sentences. It does not directly concern 21 U.S.C. § 371, pursuant to which defendant pled guilty, and under which there is no prescribed minimum sentence. However, § 371 involves a conspiracy to violate 21 U.S.C. § 841, and § 841 is included under the "safety valve" provision. The guidelines make clear that the base offense level for conspiracy is the same as for the underlying substantive offense. *See* U.S.S.G. § 2X1.1. The factors enumerated in the "safety valve" provision are therefore relevant sentencing considerations in this case.

Defendant meets four of the five criteria established in § 5C1.2. First, she has only one criminal history point under the guidelines. *Id.* § 5C1.2(1). Second, defendant did not use violence or threats of violence or a weapon in connection with the offense. *Id.*

§ 5C1.2(2). Third, the offense did not result in any physical injury to any person. *Id.* § 5C1.2(3). Fourth, there is no evidence to suggest that defendant was an organizer, leader, manager, or supervisor of others, and there has been no suggestion by the government that defendant was engaged in a continuing criminal enterprise. *Id.* § 5C1.2(4).

■ Defendant has not carried her burden of showing that she complied with the fifth criterion, which requires that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *Id.* § 5C1.2(5). Defendant met with her probation officer, Gregory Hunt, and claims that she told him all that she knew about the circumstances surrounding the offense. However, according to Mr. Hunt, defendant denied any knowledge about several important details concerning Tucker. Defendant apparently either failed or refused to draw any inferences from several facts. For example, she did not inquire as to Tucker's source of income during a year in which he gave her money, even though she admits that he had no obvious employment. Defendant also failed to explain the $600 found in her purse after her arrest in the District. These gaps in the information supplied to the probation officer raise serious concerns about defendant's compliance with § 5C1.2(5).

Although defendant is not entitled to a departure that would be authorized by § 5C1.2, I find that a substantial departure downward from sixty months is appropriate under § 5K2.0 of the guidelines. I therefore sentence defendant to a term of fifteen months, but because defendant is entitled to three months credit for time served, her sentence is reduced to twelve months. I recommend that the twelve months be served in a community correctional center.