110 P.3d 717 (2005)
154 Wash.2d 85
STATE of Washington, Respondent,
v.
Angela Marie LAW, Petitioner.
No. 74390-8.
Supreme Court of Washington, En Banc.
Argued September 23, 2004.
Decided April 21, 2005.
*718 Donald G. Miller, Spokane, for Petitioner.
Kevin Michael Korsmo, Spokane, for Respondent.
Sheryl Gordon McCloud, Todd Maybrown, Allen, Hansen & Maybrown PS, Seattle, for Amicus Curiae Wash. Ass'n of Criminal Defense Lawyers.
Seth Aaron Fine, Snohomish Co. Pros. Office, Everett, for Amicus Curiae Wash. Ass'n of Prosecuting Attorneys.
BRIDGE, J.
¶ 1 Angela Law pleaded guilty to one count of second degree theft. While the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, established Law's standard range sentence, based on her offense and past criminal history, as 22-29 months, the trial court sentenced her to just 6 months, and further converted 4 of those months to community service. Additionally, the trial court ruled that Law's continued work within her 12-step program would satisfy her community service hours. The Court of Appeals reversed the exceptional sentence, held the conversion of more than 30 days to community service was improper, and disallowed Law's volunteer work with the 12-step program to satisfy the court imposed community service. Law petitioned this court for review.
¶ 2 We hold now, as we have consistently in the past, that the SRA requires factors that serve as justification for an exceptional sentence to relate to the crime, the defendant's culpability for the crime, or the past criminal record of the defendant. Factors which are personal and unique to the particular defendant, but unrelated to the crime, are not relevant under the SRA. Accordingly, we affirm the Court of Appeals conclusion that the factors cited by the trial court do not support a downward exceptional sentence because they do not comply with the SRA, and that Law is ineligible for community service as a substitute for confinement. We reverse the Court of Appeals, however, and hold the trial court permissibly allowed Law's work in a 12-step program to count as community service.

I

Facts and Procedural History
¶ 3 On August 15, 2001, the Spokane County Prosecuting Attorney's Office charged Angela Law with one count of first degree theft and three counts of forgery. On March 12, 2002, Law pleaded guilty to a single count of second degree theft and, pursuant to the plea agreement, the State dismissed the three forgery counts. Based on her past criminal history, Law had an offender score of nine.[1] Comparing her second degree theft conviction and her criminal history, Law's standard sentence range was 22-29 months. The State and defendant jointly recommended a drug offender sentencing alternative (DOSA) sentence[2] for the midpoint of the above standard range.
*719 ¶ 4 At the sentencing hearing on May 6, 2002, numerous witnesses testified as to Law's adjustment and improvements following her being charged and subsequently pleading guilty in this case. Several witnesses testified as to her continuing recovery from substance abuse, her involvement in a 12-step program and church activities, her positive impact on others in recovery, and her building and strengthening of a support system. In addition, there was testimony that she was forming a strong bond with her son, currently in the foster care system, and that a lengthy term of incarceration may have an impact on the retention of her parental rights. Law also has an older daughter, to whom she has previously relinquished her parental rights, and who had been placed in foster care during a previous incarceration. Testimony at the hearing revealed that she has been recently positively involved in this daughter's life as well.
¶ 5 Based on these character references and testimony about her personal circumstances, the trial judge imposed a downward exceptional sentence. Departing from the standard range of 22-29 months, the trial court sentenced Law to 6 months, converting 4 months to community service and permitting the remaining 2 months to be served "on a work release or work crew basis or at Eleanor Chase House." Clerk's Papers (CP) at 22, 29. The court further ordered 24 months of community custody and permitted Law's work in a 12-step program to count towards her community service requirement. Finally, Law was ordered to pay restitution on all charges, including those dismissed.
¶ 6 In support of its downward departure, the trial court made the following findings: (1) Law is making progress relating to her son who is currently in foster care; (2) facilitating the return of Law's son would further the foster system's goal of returning children to their biological parents and save the state foster care system money; (3) Law's continued participation in a 12-step program would help keep her off drugs and ensure public safety; (4) Law, through her 12-step program, is having a positive impact on others; and (5) Law would be unable to pay restitution while incarcerated. Id. at 20-22. The trial court recognized that none of the statutory mitigating factors listed in the SRA applied in this situation. Noting the legislature intended the statutory factors listed to be illustrative only and nonexclusive, the trial court based its ruling, in part, on the stated purposes of the SRA, found in RCW 9.94A.010.[3]
¶ 7 The trial court's oral opinion also alluded to SRA purposes (3), (4), (5), and (6) in justifying the exceptional sentence. See Report of Proceedings (RP) at 27-28. In setting forth the basis for the exceptional sentence, the trial court found that Law's punishment, under SRA purpose 3, would be "disproportionate[ly]" harsh as it may impact her child's dependency hearing; under purpose 4, that Law's continued participation in Narcotics Anonymous would "help assure public safety;" under purpose 5, that she has established a "great support system" and should be "commended for her new behavior of the past year"in other words, she should be offered continued opportunity to improve herself; and finally under purpose 6, that an exceptional sentence would "save the foster care system money" thereby making "frugal use of ... State ... resources." CP at 21; RP at 28.
*720 ¶ 8 The State appealed asserting as error (1) the trial court's imposition of an exceptional sentence based on facts unrelated to the offense, (2) the conversion of more than 30 days of confinement to community service, and (3) the allowance that Law's work in her 12-step program could count towards her community service requirement. The Court of Appeals agreed and in an unpublished opinion reversed the trial court's sentence on all three grounds. State v. Law, noted at 117 Wash.App. 1056, 2003 WL 21546228, at **2-3. Law filed a petition for review, which this court granted.

II

Analysis
¶ 9 For the purposes of our review we first recognize that "[o]ur precedent ... clearly establishes that statutes defining punishment fall within the province of the legislature." State v. Varga, 151 Wash.2d 179, 193, 86 P.3d 139 (2004) (citing State v. Bryan, 93 Wash.2d 177, 181, 606 P.2d 1228 (1980) ("Determination of crimes and punishment has traditionally been a legislative prerogative, subject to only very limited review in the courts.")). In short, it is settled law that the "`"[f]ixing of penalties or punishments for criminal offenses is a legislative function, and the power of the legislature in that respect is plenary and subject only to constitutional provisions."'" Varga, 151 Wash.2d at 193, 86 P.3d 139 (quoting State v. Thorne, 129 Wash.2d 736, 767, 921 P.2d 514 (1996) (quoting State v. Mulcare, 189 Wash. 625, 628, 66 P.2d 360 (1937))). It is with deference to these well-defined legislative powers that we begin our analysis.

A

Exceptional Sentence
¶ 10 The first question posed to this court is whether a downward exceptional sentence may be based on factors that are personal in nature and do not relate to the crime or the past criminal record of the defendant. Law contends that the Court of Appeals erred in reversing her exceptional sentence, asserting the trial court's reliance on the purposes of the SRA, as found in RCW 9.94A.010, was sufficient justification for the downward departure. The State counters that the reasons cited by the trial court do not support a downward exceptional sentence because they are not related to the crime or Law's culpability for the crime.
¶ 11 The SRA provides that "[i]f the sentencing court finds that an exceptional sentence outside the standard range should be imposed in accordance with [former] RCW 9.94A.120(2), the sentence is subject to review only as provided for in [former] RCW 9.94A.210(4)." Former RCW 9.94A.390 (1999), recodified as RCW 9.94A.535. As such, our review is governed by the following statute:
To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.
Former RCW 9.94A.210(4) (1989), recodified as RCW 9.94A.585. We have construed this statute to establish three prongs, each with its own corresponding standard of review.
An appellate court analyzes the appropriateness of an exceptional sentence by answering the following three questions under the indicated standards of review:
1. Are the reasons given by the sentencing judge supported by evidence in the record? As to this, the standard of review is clearly erroneous.
2. Do the reasons justify a departure from the standard range? This question is reviewed de novo as a matter of law.
3. Is the sentence clearly too excessive or too lenient? The standard of review on this last question is abuse of discretion.
State v. Ha'mim, 132 Wash.2d 834, 840, 940 P.2d 633 (1997) (citing former RCW 9.94A.210(4); State v. Branch, 129 Wash.2d 635, 645-46, 919 P.2d 1228 (1996); and State v. Allert, 117 Wash.2d 156, 163, 815 P.2d 752 (1991)). Here, our inquiry focuses on the second question above, that is, whether the *721 reasons stated by the trial court justify a downward departure.[4] Therefore, our review is de novo.
¶ 12 Generally, a trial court must impose a sentence within the standard range. See former RCW 9.94A.120(1) (2000), recodified as RCW 9.94A.505(2)(a)(i). The SRA permits departures from the standard range, instructing that "[t]he court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." Former RCW 9.94A.120(2) (2000), recodified as RCW 9.94A.535. The SRA then sets forth nonexclusive "illustrative" factors which the court may consider in exercising its discretion to impose an exceptional sentence.[5] Former RCW 9.94A.390. While the statutory mitigating factors listed are "illustrative" only it should be noted that all the examples relate directly to the crime or the defendant's culpability for the crime committed.[6]
¶ 13 Our case law on this subject is well-established. We have held that the SRA establishes a two-part test to determine if a sentencing departure is justified as a matter of law.
In determining whether a factor legally supports departure from the standard sentence range, this Court employs a two-part test: first, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range; second, the asserted aggravating or mitigating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category.
Ha'mim, 132 Wash.2d at 840, 940 P.2d 633 (citing State v. Alexander, 125 Wash.2d 717, 725, 888 P.2d 1169 (1995)).
¶ 14 Looking to the first prong of the above Ha'mim test, we have previously concluded that the purposes of the SRA were factors necessarily considered by the legislature in establishing the standard sentence range. See State v. Pascal, 108 Wash.2d 125, 137-38, 736 P.2d 1065 (1987). In Pascal the trial court imposed an exceptional sentence of 90 days for an offense with a presumptive range of 31-41 months based on the fact that the victim was the aggressor, the defendant committed the offense under duress, and as a battered woman she was incapable of appreciating the wrongfulness of her actions. Id. at 126, 136, 736 P.2d 1065.
¶ 15 As here, the trial court in Pascal additionally cited to the purposes of the SRA as further justification, noting that a reduced sentence would be appropriate because of the defendant's lack of criminal history, the defendant's low threat to the public, because it would offer the defendant an opportunity to improve herself, and because it would be a *722 frugal use of the State's resources. Id. at 137, 736 P.2d 1065.[7] On review, while upholding the exceptional sentence, we rejected these additional justifications and specifically noted that the SRA's stated purposes, "standing alone, would not justify an exceptional sentence ... [as][t]he presumptive sentence ranges established for each crime represent the legislative judgment as to how these interests shall best be accommodated." Id. We further explained that "[t]he trial court's subjective determination that these ranges are unwise, or that they do not adequately advance the above goals, is not a substantial and compelling reason justifying a departure." Id. at 137-38, 736 P.2d 1065.
¶ 16 In 1995 we reached the same conclusion. See State v. Freitag, 127 Wash.2d 141, 145, 896 P.2d 1254, 905 P.2d 355 (1995). In Freitag, the trial court imposed an exceptional sentence based on the defendant's lack of criminal history, "her concern for people beyond that normally shown by others," and the trial court's belief that community service would be more appropriate in light of current jail overcrowding. Id. at 143, 896 P.2d 1254. On review, we rejected per curiam the imposition of an exceptional sentence because the trial court's justifications were impermissibly based on the SRA's purposes. Id. at 145, 896 P.2d 1254.
[T]he trial court's desire for Freitag to improve herself through community service while limiting prison overcrowding does not justify departure from the standard sentencing range since the Legislature already considered these purposes when establishing the presumptive sentencing ranges.

Id. (emphasis added) (citing RCW 9.94A.010(5), (6) and Pascal, 108 Wash.2d at 137, 736 P.2d 1065).
¶ 17 Finally, in 2002 we reaffirmed our holding in Pascal that the purposes of the SRA were factors considered by the legislature in establishing the standard ranges. State v. Fowler, 145 Wash.2d 400, 409, 38 P.3d 335 (2002). In Fowler, the trial court imposed a 15-month exceptional sentence for first degree armed robbery, departing from the standard range of 31 to 41 months and 60 month firearm enhancement. Id. at 403, 38 P.3d 335. Rejecting the trial court's justification that the defendant posed a "low to moderate risk to reoffend," we held that "protection of the public has already been considered by the legislature in computing the presumptive sentencing range." Id. at 409, 38 P.3d 335 (citing Pascal, 108 Wash.2d at 137, 736 P.2d 1065). As such, we have consistently held that the purposes of the SRA, as stated in RCW 9.94A.010, are insufficient factors to justify a departure from the guidelines.
¶ 18 The second prong of the Ha'mim test requires that the "mitigating factor must ... distinguish the crime in question from others in the same category." Ha'mim, 132 Wash.2d at 840, 940 P.2d 633. This second prong encapsulates the SRA's explicit command that sentences be imposed "without discrimination as to any element that does not relate to the crime or the previous record of the defendant." RCW 9.94A.340. In adopting this sentencing requirement, the legislature provided the only basis on which discrimination is allowed: any element that relates to the crime or previous record.
¶ 19 Our cases have applied RCW 9.94A.340 to prohibit exceptional sentences based on factors personal in nature to a particular defendant. In Freitag, the trial court based the defendant's exceptional sentence, in part on her "concern for others." 127 Wash.2d at 145, 896 P.2d 1254. Citing RCW 9.94A.340, we reversed, holding such consideration was improper. Id. We concluded that "[w]hile we recognize the harshness of a rule that precludes the trial court from considering a defendant's altruistic past during the sentencing phase, the Sentencing Reform Act of 1981 requires this result." Id. at 144, 896 P.2d 1254 (emphasis added) (citing RCW 9.94A.340).
¶ 20 We reached a similar conclusion in Ha'mim itself. There, the defendant was 18 years old with no previous police contacts when she took part in the armed robbery of a *723 beauty salon. Ha'mim, 132 Wash.2d at 836-37, 940 P.2d 633. The trial court, relying on the defendant's "youth" and "lack of [any] prior contact[ ] with the police," imposed an exceptional sentence of 31 months, departing downwards from the standard range of 55-65 months. Id. at 837-38, 940 P.2d 633. On review, this court rejected the use of age as a mitigating factor. Id. at 846, 940 P.2d 633. In doing so, this court relied on RCW 9.94A.340 in concluding that "[t]he age of the defendant does not relate to the crime or the previous record of the defendant." Id. at 847, 940 P.2d 633. Thus, we held that this personal factor was not a substantial and compelling reason to impose an exceptional sentence.
¶ 21 Finally, we confirmed this rule again in 2002 in Fowler. In Fowler, the trial court relied, in part, on the defendant's strong family support as justification for an exceptional sentence. 145 Wash.2d at 404, 38 P.3d 335. We rejected this justification based on the rule that mitigating factors "must relate to the crime and make it more, or less, egregious." Id. In doing so we reaffirmed the rule that any reasons that are relied on for deviating from the standard range must "relate to the crime committed by the defendant and ... distinguish the crime from other crimes of the same statutory category." Id. at 411, 38 P.3d 335. In sum, this court has consistently interpreted the SRA to require mitigating and aggravating factors to relate to the crime and distinguish it from others in the same category.[8]
¶ 22 As further support for our precedent, Professor David Boerner, analyzing RCW 9.94A.340 in the context of exceptional sentences, explains that rather than granting the trial court extensive discretion in departing from the guidelines, the legislature adopted a "general" and "broad[ ]" provision "which uses the crime and the previous record of the defendant as the sole basis for determining what information may be considered. Information that does not `relate' to those two facts is not relevant and may not be used." DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981 § 9.17, at 9-50 (1985) (emphasis added).[9] Thus, RCW 9.94A.340 *724 operates to regulate and constrain departures from the sentencing guidelines.
¶ 23 It is with these legislative mandates and our own well-established precedent in mind that we analyze the trial court's exceptional sentence here. Again, we review the trial court's stated justifications for departing from the standard sentencing range de novo. Freitag, 127 Wash.2d at 144, 896 P.2d 1254 (citing State v. Johnson, 124 Wash.2d 57, 65-66, 873 P.2d 514 (1994)).
¶ 24 The parties do not dispute that the factors relied on by the trial court[10] were unrelated to the crime committed. However, Law asserts that the SRA permits the imposition of exceptional sentences based on the purposes of the Act. In addition, amicus curiae Washington Association of Criminal Defense Lawyers (WACDL), and to a lesser degree, Law, suggest overruling several of this court's prior applications of the SRA to allow for exceptional sentences based on attributes or circumstances of particular defendants.[11]
¶ 25 First, Law cites the Court of Appeals case State v. Friederich-Tibbets, 70 Wash.App. 93, 853 P.2d 457 (1993), overruled by 123 Wash.2d 250, 866 P.2d 1257 (1994) (per curiam), as authority for reliance on the purposes of the SRA in support of an exceptional sentence.[12] However, given our reversal of the Court of Appeals ruling in that case, coupled with the cases subsequent to it discussed above, the Court of Appeals ruling in Friederich-Tibbets lacks any precedential value in this context.
¶ 26 In fact, we had previously concluded in Pascal that the purposes of the SRA were factors necessarily considered by the legislature in establishing the standard sentence range, and as such are impermissible justifications on which to deviate from the standard range. Pascal, 108 Wash.2d at 137-38, 736 P.2d 1065.
The SRA was designed to provide proportionate punishment, protect the public and provide rehabilitation, and the presumptive ranges established for each crime represent the Legislature's judgment as to how best to accommodate those interests. State v. Pascal, 108 Wash.2d 125, 137, 736 P.2d 1065 (1987) held that the trial court's subjective determination that these ranges are unwise or that they do not advance these goals is not a reason justifying departure from the normal range....
Allert, 117 Wash.2d at 169, 815 P.2d 752 (footnote omitted); see also Gaines, 122 Wash.2d at 513, 859 P.2d 36.[13] This precedent and rationale applies here and controls our decision. The trial court's disagreement with the legislature's determinations cannot *725 justify a departure. Thus, consistent with our own precedent, we are not persuaded that the purposes of the SRA alone are sufficient to justify a departure. The trial court's reliance on the purposes of the SRA violates the first prong of the Ha'mim test set forth above.
¶ 27 Second, with regard to the second prong of the Ha'mim test, Law and amicus curiae WACDL would have us hold personal factors such as "parenting responsibilities" and "post-offense rehabilitation" to be valid mitigating factors under the SRA. See Amicus Br. of WACDL at 26. The State counters that the SRA prohibits such considerations.
¶ 28 In 2002, we addressed the issue of personal considerations in sentencing under the SRA. In Fowler, following testimony from the defendant's family, the trial court imposed a sentence below the standard range, based in part on a finding that the defendant "had a `great deal of family support.'" Fowler, 145 Wash.2d at 411, 38 P.3d 335 (quoting trial court record). Because "the fact of family support does not relate to the crime committed by the defendant," we held this justification was improper. Id. In other words, Fowler explicitly established that for a factor to support an exceptional sentence it "must relate to the crime and make it more, or less, egregious." Id. at 404, 38 P.3d 335.
¶ 29 Additionally, in cases strikingly similar to the one before us today, Washington courts have rejected family considerations as valid mitigating circumstances. See, e.g., State v. Amo, 76 Wash.App. 129, 882 P.2d 1188 (1994). In Amo, the trial court justified the exceptional sentence, in part, due to the fact that the defendant had a newborn son, and her standard range of 22-29 months could negatively impact her parental rights. Id. at 133, 882 P.2d 1188. The Court of Appeals, Division Three, held that, based on the "legislative constraints" of the SRA such family considerations cannot support an exceptional sentence. Id. at 134, 882 P.2d 1188 (fact that defendant has a son "does not make the commission of her three crimes any less offensive"); see also State v. Hodges, 70 Wash.App. 621, 626, 855 P.2d 291 (1993) ("The fact that [the defendant] ... is needed by her children does not in any way distinguish her possession and delivery of cocaine."), cited with approval in Fowler, 145 Wash.2d at 411, 38 P.3d 335.
¶ 30 While we recognize that Law has made a genuine and commendable effort to remain drug free and establish a healthy relationship with her children, we must enforce the will of the legislature. The consideration of personal factors such as these were in many ways the very impetus behind the enactment of sentencing reform in Washington. See generally BOERNER, supra, at §§ 1, 2, 4.1. The trial court's imposition of an exceptional sentence based on its finding that a standard range sentence would be disproportionate because of its potential impact on Law's parental rights creates the very type of disproportionality the legislature intended to eradicate. See RCW 9.94A.010(3) (sentences should "[b]e commensurate with the punishment imposed on others committing similar offenses"). Inevitably and tragically many criminal offenders subjected to incarceration have family circumstances that are impacted by their criminal actions. Although Law has made great strides in her life since the commission of her crimes and "[a]lthough sentencing within the standard range may at times appear unnecessary or even unjustified, it is the function of the judiciary to impose sentences consistent with legislative enactments." Freitag, 127 Wash.2d at 144, 896 P.2d 1254.
¶ 31 In enacting RCW 9.94A.340 the legislature restricted sentencing courts' exercise of discretion in implementing the SRA; explicitly prohibiting reliance on "any element that does not relate to the crime or the previous record of the defendant." Our cases considering this statute's effect on the imposition of exceptional sentences hold that this nondiscrimination provision prohibits considerations of factors unrelated to the crime and of factors personal in nature to a particular defendant. Ha'mim, 132 Wash.2d at 846-47, 940 P.2d 633; Freitag, 127 Wash.2d at 144-45, 896 P.2d 1254. It is undisputed that the trial court's stated justifications were unrelated to the crime and based on the personal circumstances of the defendant. Because such consideration is *726 contrary to the will and intention of the legislature, the trial court's justifications were insufficient as a matter of law. While amicus asserts general policy justifications for consideration of such personal factors, it fails to show how our prior interpretations of the SRA are in fact incorrect.[14] Absent such a showing, the doctrine of stare decisis compels us to reaffirm our prior case law construing the SRA.
¶ 32 In conclusion, the trial court's sentence fails both prongs of the Ha'mim test set forth above.[15]Ha'mim, 132 Wash.2d at 840, 940 P.2d 633. The trial court's imposition of an exceptional sentence based on the stated purposes of the SRA, impermissibly relied on "factors necessarily considered by the Legislature in establishing the standard sentence range." Id. Additionally, the mitigating factors cited, specifically, Law's progress in relating to her children, a desire to save the foster system money and further its goals, Law's progress in her 12-step program, Law's positive impact on others, and Law's inability to pay restitution while incarcerated, all were personal in nature, and failed to "distinguish the crime in question from others in the same category."[16]Id. As such, none of the factors relied on by the trial court were sufficiently substantial and compelling to justify an exceptional sentence.

B

Conversion of More than 30 Days to Community Service
¶ 33 As part of Law's exceptional sentence, the trial court converted four months of her sentence to community service. The Court of Appeals reversed holding that the SRA permits a maximum conversion of 30 days. Law, 117 Wash.App. 1056, 2003 WL 21546228, at *2.
¶ 34 The SRA governs alternatives to confinement and conversion of confinement to community service.
Alternatives to total confinement are available for offenders with sentences of one year or less. These alternatives include the following sentence conditions that the court may order as substitutes for total confinement: ... for offenders convicted of nonviolent offenses only, eight hours of community service may be substituted for one day of total confinement, with a maximum conversion limit of two hundred forty hours or thirty days.

Former RCW 9.94A.380 (1999) (emphasis added), recodified as RCW 9.94A.680. Former RCW 9.94A.380 has two substantive limitations; first, it is available only for offenders with sentences of one year or less, and *727 second, it limits the amount of confinement eligible to be converted to a maximum of 30 days.[17] See id. Because we hold today that Law's exceptional sentence was improper as a matter of law, and remand for resentencing within the standard range, Law's sentence will necessarily be for a period greater than one year.[18] On remand, former RCW 9.94A.380 will not permit conversion of confinement to community service and thus the trial court's conversion is rendered moot by our decision.

C

Law's Work in 12-Step Program as Community Service
¶ 35 The last issue before this court is whether Law's volunteer work for Narcotics Anonymous (NA), a 12-step recovery program, may count towards her community service requirement.[19] The parties dispute whether the trial court's allowance is permissible under the SRA.
¶ 36 It is necessary here to distinguish between Law's mere "[a]ttendance" at NA meetings, see CP 29, and her volunteer "work" for the program. See CP 22. Community service, since renamed community restitution, is "compulsory service, without compensation, performed for the benefit of the community by the offender." Former RCW 9.94A.030(7) (1999), recodified as RCW 9.94A.030(8) (renumbering subsections and renaming "community service" as "community restitution"). In order for service to count as community restitution it must directly benefit the community. Any indirect benefit the community receives from an addicted offender receiving treatment is significant, but not the type of direct benefit envisioned by the statute. See former RCW 9.94A.030(7). Therefore, an offender's mere attendance and participation in a 12-step program, is not community service because it does not directly benefit the community. See State v. Hale, 94 Wash.App. 46, 55, 971 P.2d 88 (1999) ("the SRA does not grant trial courts authority to credit drug treatment against confinement time or community service"). To the extent the trial court's order permitted Law's mere attendance at NA meetings to satisfy her community service requirement it is overruled.
¶ 37 On the other hand, Law asserts that the trial court intended that her work, and not her mere attendance at NA meeting be counted towards her required community service hours. See Pet. for Review at 3 n.2 ("This is work over and above mere participation in the program."). Specifically, the record indicates Law provides service to the community when she: (1) helps other women seeking recovery, (2) takes charge of and leads NA meetings, and (3) participates in organizing and setting up NA meetings. RP at 9-12; 19-20. This is work rightfully defined as for "the benefit of the community." Former RCW 9.94A.030(7).
¶ 38 In response, the State further asserts that Law impermissibly receives "compensat[ion]" for her work for NA because "she gets a benefit from the program," i.e., "the personal improvement of receiving assistance in staying off drugs." Br. of Appellant at 10. The State contends that this benefit is contrary to the language of the statute which "indicates that community service must be *728 without compensation." Id. There are two flaws in the State's reasoning. First, the State conflates Law's participation in NA with her volunteer work for the community through the program. Second, the State attempts to deny Law the natural benefits of work and community participation by labeling these benefits "compensation." There are many positive aspects of the community restitution program, with benefits undoubtedly flowing to the community and the offender. For instance, an offender may benefit from community restitution when he or she gains job or other life skills, strengthens their work ethic, or is exposed to positive role models through their service work. See generally DEPARTMENT OF CORRECTIONS, COMMUNITY SERVICE AND WORK CREWS, available at http://www.doc .wa.gov/CPP/cp p1.htm (last viewed April 19, 2005). Therefore, the State's broad assertion that any benefit to the offender results in impermissible compensation is unreasonable and without merit.[20]
¶ 39 Law's work in support of NA is the type of service envisioned by the SRA. See former RCW 9.94A.030(7). While, according to former RCW 9.94A.030(7) Law's mere attendance at NA meetings is insufficient to satisfy her community service requirement, the trial court did not abuse its discretion in permitting Law's continued work in the NA program to count as community service. In addition, Law does not impermissibly receive compensation for this work. Accordingly, we reverse the Court of Appeals on this issue and now hold that Law's work in a 12-step program qualifies as community service.

III

Conclusion
¶ 40 The SRA requires that factors that justify an exceptional sentence must relate to the crime, the defendant's culpability for the crime, or the past criminal record of the defendant. We thus affirm the Court of Appeals conclusion that the factors cited by the trial court cannot support an exceptional sentence. Based on this holding, Law is ineligible for community service as a substitute for confinement. However, we reverse the Court of Appeals and hold that Law's work in a 12-step program may count towards her community service requirement should she be afforded a DOSA on sentencing on remand. Accordingly, we affirm in part and reverse in part the Court of Appeals and remand to the trial court for resentencing within the standard range.[21]
WE CONCUR: ALEXANDER, C.J., CHAMBERS, OWENS, FAIRHURST, JJ., and IRELAND, J.P.T.
SANDERS, J. (dissenting).
¶ 41 The plain meaning and legislative history of RCW 9.94A.340 conclusively demonstrate factors used to support downward departing exceptional sentences do not need to relate only to the crime itself. Therefore Law's exceptional sentence was appropriate.
*729 ¶ 42 The majority traces the recent history of the "nature of the crime" exceptional sentence doctrine but does not delve into the doctrine's origins. There appear to be two sources for this "nature of the crime" doctrine. One is DAVID BOERNER, SENTENCING IN WASHINGTON § 9.6, at 9-13 (1985); the other is RCW 9.94A.340.

I. The BOERNER treatise
¶ 43 The BOERNER treatise was first cited in a dissent by Justice Utter in State v. Nordby, 106 Wash.2d 514, 520, 723 P.2d 1117 (1986), for the proposition that "[a] sentence outside the presumptive sentencing range is appropriate only when the circumstances of the crime distinguish it from other crimes of the same statutory category."
¶ 44 A majority of this court applied this language to exceptional sentences generally in State v. Pennington, 112 Wash.2d 606, 610, 772 P.2d 1009 (1989).[1] However, the Pennington court erred in doing so, and the line of cases built on that authority has merely perpetuated that error.
¶ 45 The sections of the BOERNER treatise cited in Nordby do not suggest that all reasons for imposing an exceptional sentence must relate to the crime itself. Rather, Professor Boerner discusses the problem of distinguishing specific aspects of the crime committed by the defendant from other similar crimes when imposing an exceptional sentence, a process presumably already performed by the sentencing commission in suggesting a standard range:
The solution to this potential dilemma is the adoption of the principle that while factors which truly distinguish the crime from others in the same statutory category may justify an exception, those which are inherent in that class of crimes and do not distinguish the defendant's behavior from that inherent in all crimes of that classification may not.
See BOERNER, supra, § 9.6, at 9-13.
¶ 46 While Professor Boerner's analysis may be correct, he did not address the issue in the present case: whether factors unrelated to the crime, but related to the defendant, can be used to justify an exceptional sentence.
¶ 47 In context, the citation in the dissent by Justice Utter was appropriate. Justice Utter was discussing whether a vehicular assault on a pedestrian so distinguished the crime from other vehicular assaults as to merit an exceptional sentence. The issue was whether the crime of vehicular assault, and the standard range punishment, already encapsulated the fact that many vehicular assaults are committed against pedestrians. That issue had nothing to do with whether a characteristic of the defendant could be used in the defendant's sentencing under the Sentencing Reform Act of 1981(SRA). See Nordby 106 Wash.2d at 520, 723 P.2d 1117.
¶ 48 But in Pennington this court took the quotation from Justice Utter out of context and without any analysis of the actual BOERNER text. Pennington, 112 Wash.2d at 610, 772 P.2d 1009. A proper reading of the treatise, and of the initial citation of the treatise in our case law, indicates that neither stood for the proposition cited by this court in Pennington.

II. RCW 9.94A.340
¶ 49 The second leg upon which the "crime-specific" line of cases rests is RCW 9.94A.340, which reads:
The sentencing guidelines and prosecuting standards apply equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant.
Id.
¶ 50 This statute has been repeatedly interpreted to require that any factor used to justify an exceptional sentence relate to the crime or the previous criminal record of the defendant. See State v. Ha'mim, 132 Wash.2d *730 834, 847, 940 P.2d 633 (1997).[2] However, the statute has never been analyzed by this court, and the plain language and legislative history of the statute do not support the prior interpretation.
¶ 51 First, the statute by its terms applies to the "sentencing guidelines." By definition this statute does not apply to sentences which depart from the guidelines. Indeed, the statutory section actually governing exceptional sentences is labeled "Departures from the guidelines." See RCW 9.94A.535.
¶ 52 RCW 9.94A.340 requires that the guidelines be applied without "discrimination" as to elements that do not relate to the crime or the defendant's prior record. Discrimination is not a synonym for consideration.[3] This statute simply means what it saysthat the sentencing guidelines should be applied without considering factors other than the crime and prior criminal record, factors such as race, sex, economic status, education, or family history.
¶ 53 The legislative history of RCW 9.94A.340 confirms this interpretation. After the Sentencing Reform Act was enacted in 1981, the legislature instructed the newly created Sentencing Guidelines Commission to report to the legislature. LAWS OF 1981, ch. 137, § 4(7), (8). The legislature committed to "enact laws approving or modifying" the standards recommended by the commission. In January 1983, the Sentencing Guidelines Commission issued a Report to the Legislature. This report is contained in the bill file for Engrossed Substitute House Bill (ESHB) 297, the vehicle through which current RCW 9.94A.340 became law.[4] The second page of that report stated:
The presumptive sentence ranges will apply to all felony offenders statewide without regard to race, sex, economic status, education or family history.
Report of the Sentencing Guidelines Commission to the Legislature, Jan. 1983, contained in the House Judiciary Committee bill file, Engrossed Substitute House Bill 297 (1983). See also SENTENCING GUIDELINES COMMISSION: REPORT TO THE LEGISLATURE 2 (Jan.1983).
¶ 54 The bill file for the companion bill[5] to ESHB 297, Engrossed Substitute Senate Bill (ESSB) 3414, contained a summary of that report.[6] That summary used very similar language: "The sentence ranges will apply to all felony offenders statewide without regard to race, sex, economic status, education or family history."[7]
¶ 55 The specific language of RCW 9.94A.340, which became section 5 of both companion bills, was first added to the Senate Bill (ESSB 3414) on the floor of the Senate. The original language of the proposed amendment was:
The Sentencing Guidelines and Prosecuting Standards apply equally to offenders in all parts of the state, without regard to race, ethnicity, creed, gender, sexual preference, or socio-economic status.
1 SENATE JOURNAL, 48th Leg., Reg. Sess., at 484 (Wash.1983).
¶ 56 Several senators introduced amendments to this language, attempting to remove specific terms, such as "creed" and "sexual preference." Id. In response to *731 these motions, Senator Clarke introduced an amendment to the amendment that struck what he referred to as "these shopping lists" and inserted the language that became part of RCW 9.94A.340. Id. at 484-85.
¶ 57 The language of RCW 9.94A.340 was clearly intended as general antidiscrimination language applicable to the guidelines themselves. This is further corroborated by the legislative history of the bill which actually became RCW 9.94A.340, Engrossed Substitute House Bill 297.
¶ 58 When ESHB 297 had passed the House and was pending before the Senate Judiciary Committee, the House Judiciary Committee had before it the companion bill, ESSB 3414. Counsel for the House Judiciary Committee drafted a memorandum to the state representatives on the committee comparing the differences that had developed "between the house and senate versions of these bills."[8] In that memo, the House counsel describes the language added by the Senate: "ESSB 3414 contains a new section 5 which prohibits discrimination in sentencing. This provision is not found in ESHB 297."[9]
¶ 59 The House counsel clearly informed the members of the legislature that the new provision is a general antidiscrimination provision applied to the guidelines. And while that provision was not yet in ESHB 297, it soon would be. The Senate Judiciary Committee added the language in a striking amendment.[10] 1 SENATE JOURNAL, 48th Leg., Reg. Sess., at 956 (Wash.1983).
¶ 60 The plain language and the legislative history of RCW 9.94A.340 clearly demonstrate that the statute prohibits discrimination in application of the sentencing guidelines and prosecuting standards for reasons not related to the crime or the prior record of the defendant.[11] Both the plain language and legislative history of the statute demonstrate that the statute was not intended to apply to sentences imposed outside the sentencing guidelines, which are specifically governed by a separate statute.[12]

*732 III. Trial court's reasons for departing from sentencing guidelines
¶ 61 If the trial court is permitted to consider factors external to the crime itself as the basis for an exceptional sentence, then we must follow the plain language of the statute governing "departures from the guidelines" to determine whether the sentence was justified. It is an age-old principle that this court's prior interpretations do not control if the plain language of statute requires a different result. See, e.g., Maximillian v. Clausen, 117 Wash. 74, 80, 203 P. 379 (1922).
¶ 62 The majority cites State v. Pascal, 108 Wash.2d 125, 736 P.2d 1065 (1987), and two successor cases for the proposition that the purposes of the SRA cannot be used to justify an exceptional sentence. Majority at 9-11. However, the plain language of the SRA itself must control our analysis.
¶ 63 In June and July 2000, the period covering the second amended information to which Law pleaded, former RCW 9.94A.390 (1999) governed "departures from the guidelines." Former RCW 9.94A.390 required a court to impose an exceptional sentence outside the standard sentence range "in accordance with RCW 9.94A.120(2)." Former RCW 9.94A.390.
¶ 64 Former RCW 9.94A.120 (1999) governed "Sentences." Section (1) required trial courts to impose a sentence within the standard range for the offense "except as authorized in subsections (2)...." Former RCW 9.94A.120(2) provided:
The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.
Former RCW 9.94A.120(2) (emphasis added).[13]
¶ 65 Former RCW 9.94A.390 contained a list of "illustrative factors," but cautions that the factors "are illustrative only and are not intended to be exclusive reasons for exceptional sentences." Id. As one commentator noted, Washington's "courts have never provided a comprehensive definition of what constitute `substantial and compelling' reasons." 13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 3801, at 370 (2d ed.1998).
¶ 66 The statute specifically directs courts to assess a factor justifying an exceptional sentence by "considering the purpose of this chapter." Former RCW 9.94A.120(2). The purposes of the chapter are set forth in RCW 9.94A.010, which today is substantively identical to the statute in effect in 2000:
The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:
(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
(2) Promote respect for the law by providing punishment which is just;
(3) Be commensurate with the punishment imposed on others committing similar offenses;
(4) Protect the public;
(5) Offer the offender an opportunity to improve him or herself;

*733 (6) Make frugal use of the state's and local governments' resources; and
(7) Reduce the risk of reoffending by offenders in the community.
RCW 9.94A.010.
¶ 67 The trial court found substantial and compelling reasons to depart from the standard sentence range given the purposes of the SRA. It noted incarceration which resulted in termination of Law's parental rights with her young son would be disproportionate punishment. Clerk's Papers at 22. Moreover, one purpose of the SRA is to provide proportionate punishment that was "just." RCW 9.94A.010(2). The trial court found Law's participation in the Narcotics Anonymous (NA) program would "help assure public safety," which serves the SRA purpose of protecting the public. RCW 9.94A.010(4). The trial court recognized Law's participation in the NA program offered her the opportunity to improve herself. RCW 9.94A.010(5). The trial court found that allowing Law to continue to develop her relationship with her son, and possibly to regain custody of her son, would make frugal use of the state's resources. RCW 9.94A.010(6).
¶ 68 Other jurisdictions have recognized this rationale as sufficiently compelling to allow downward departures from standard sentence guidelines. Courts have found amenability to drug treatment can be treated as evidence of presentence rehabilitation, which can serve as the basis for a downward departure from a sentencing grid. State v. Gebeck, 635 N.W.2d 385, 389-390 (Minn.Ct.App.2001). Herrin v. State, 568 So.2d 920, 922 (Fla.1990). And numerous courts have held family circumstances can serve as the basis for a downward departure from sentencing guidelines.[14]United States v. Leon, 341 F.3d 928 (9th Cir.2003); United States v. Norton, 218 F.Supp.2d 1014 (E.D. Wis.2002); United States v. Blackwell, 897 F.Supp. 586 (D.D.C.1995); United States v. Cabell, 890 F.Supp. 13 (D.D.C.1995). This is particularly true where, as here, incarceration might result in a young child being placed in foster care. United States v. Newell, 790 F.Supp. 1063 (E.D.Wash.1992).
¶ 69 The trial court's exceptional sentence under the facts of this case is neither contrary to the statute nor an abuse of discretion. I would affirm the trial court's exceptional sentence[15] and thus dissent.
C. JOHNSON and MADSEN, JJ., concur.
NOTES
[1] An offender score of nine is the highest possible offender score recognized by the SRA. See former RCW 9.94A.310 (2000), recodified as RCW 9.94A.510; see also former RCW 9.94A.360 (1999), recodified as RCW 9.94A.525.
[2] See former RCW 9.94A.120(6) (2000), recodified as RCW 9.94A.660.
[3] RCW 9.94A.010 provides, in full:

The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:
(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
(2) Promote respect for the law by providing punishment which is just;
(3) Be commensurate with the punishment imposed on others committing similar offenses;
(4) Protect the public;
(5) Offer the offender an opportunity to improve him or herself;
(6) Make frugal use of the state's and local governments' resources; and
(7) Reduce the risk of reoffending by offenders in the community.
[4] The State has not challenged the sufficiency of the record nor asserted that the sentence was clearly too lenient.
[5] The relevant statutory mitigating factors include:

(a) To a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.
(b) Before detection, the defendant compensated, or made a good faith effort to compensate, the victim of the criminal conduct for any damage or injury sustained.
(c) The defendant committed the crime under duress, coercion, threat, or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct.
(d) The defendant, with no apparent predisposition to do so, was induced by others to participate in the crime.
(e) The defendant's capacity to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law, was significantly impaired (voluntary use of drugs or alcohol is excluded).
(f) The offense was principally accomplished by another person and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim.
(g) The operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010.
(h) The defendant or the defendant's children suffered a continuing pattern of physical or sexual abuse by the victim of the offense and the offense is a response to that abuse.
Former RCW 9.94A.390(1).
[6] The illustrative statutory aggravating factors similarly all relate to the offense or the defendant's culpability for the same. See former RCW 9.94A.390(2).
[7] Like here, the trial court in Pascal relied principally on purposes (3), (4), (5), and (6) of the SRA. 108 Wash.2d at 130, 736 P.2d 1065.
[8] Other cases have consistently applied this standard. See State v. Gaines, 122 Wash.2d 502, 509-14, 859 P.2d 36 (1993) (rejecting drug addiction as valid mitigating factor because fails it to "distinguish the defendant's crime from others in the same category"); State v. Allert, 117 Wash.2d 156, 169-70, 815 P.2d 752 (1991) (defendant's treatment needs and finding that he did not pose a threat to community not substantial and compelling reasons to justify departure); State v. Estrella, 115 Wash.2d 350, 357-60, 798 P.2d 289 (1990) (trial court's judgment that defendant would benefit from rehabilitation insufficient to justify exceptional sentence); State v. Pennington, 112 Wash.2d 606, 610-12, 772 P.2d 1009 (1989) (defendant's drug problem is neither exceptional nor a factor that distinguishes his crime from others in the same category); Pascal, 108 Wash.2d at 135-38, 736 P.2d 1065 (variations from standard range appropriate where factors, such as defendant's status as battered woman, distinguish blameworthiness of defendant from others who commit same crime).

The same principle applies to aggravating factors. See, e.g., State v. Barnes, 117 Wash.2d 701, 711-12, 713-14, 818 P.2d 1088 (1991) (holding finding of future dangerousness insufficient aggravating factor to justify exceptional sentence in nonsexual offense cases).
[9] While the clear directive of RCW 9.94A.340 supports our prior applications, the provision's legislative history further supports our construction of it here. The 1983 legislature presumably considered and ultimately rejected the following alternative language: "The presumptive sentence ranges will apply to all felony offenders statewide without regard to race, sex, economic status, education or family history." SENTENCING GUIDELINES COMMISSION: REPORT TO THE LEGISLATURE at 2 (Jan. 10, 1983); and "The Sentencing Guidelines and Prosecuting Standards will apply equally to offenders in all parts of the state, without regard to race, ethnicity, creed, gender, sexual preference, or socio-economic status." Id. at 47, see also BOERNER, supra, § 9.17, at 9-50. Both versions above were presented to the legislature by the Sentencing Guidelines Commission in 1983, the second of which was eventually presented to the Senate as an amendment to S.B. 3414, 48th Leg., Reg. Sess. (Wash.1983). See 1 SENATE JOURNAL, 48th Leg., Reg. Sess., at 484 (Wash.1983). In adopting RCW 9.94A.340 as it presently reads, the legislature chose, first, to apply the nondiscrimination provision to the entirety of the "sentencing guidelines" as opposed to simply the "presumptive sentence ranges." See former RCW 9.94A.030(35) (1999) ("`Sentence range' means the sentencing court's discretionary range in imposing a nonappealable sentence."), recodified as RCW 9.94A.030(40) (renumbering subsections and replacing "[s]entence range" with "[s]tandard sentence range"). Second, the legislature rejected a prohibition on discrimination as to discrete factors, adopting instead, a prohibition on discrimination "as to any element that does not relate to the crime or the previous record of the defendant." RCW 9.94A.340. As such, this legislative history of the SRA's nondiscrimination provision strongly supports our precedents applying RCW 9.94A.340 to exceptional sentences. The dissent's suggestion that this court adopt the narrow language rejected by the legislature, see dissent at 730, and decline to give effect to the "general" and "broad" statute the legislature ultimately enacted is untenable.
[10] See supra at 719-20.
[11] At oral argument, counsel for Law asserted that upholding the trial court's exceptional sentence here "probably" requires us to overrule Pascal, while amicus additionally asserted in their briefing that such a ruling would potentially require us to overrule Fowler, Ha'mim, and Freitag. See Wash. State Supreme Court oral argument, State v. Law, No. 74390-8 (Sept. 23, 2004), audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw .org; see also Br. of Amicus Curiae WACDL at 26.
[12] The trial court in Friederich-Tibbets, concluding that factors justifying an exceptional sentence "`must relate not to individual differences from one defendant or another, [nor] to the fact that a defendant has ... changed his life around,'" determined it was compelled by the SRA to impose a sentence within the standard range. Friederich-Tibbets, 70 Wash.App. at 95, 853 P.2d 457 (emphasis omitted) (quoting trial court's ruling). However, a divided panel of the Court of Appeals, Division One, reversed and held that a trial court could consider the purposes of the SRA in imposing an exceptional sentence. Id. at 96-97, 853 P.2d 457. The State petitioned this court for review, and we reversed per curiam based on the SRA's mandate that "`[a] sentence within the standard range for the offense shall not be appealed.'" State v. Friederich-Tibbets, 123 Wash.2d 250, 252, 866 P.2d 1257 (1994) (quoting former RCW 9.94A.210(1)). Concluding no basis for appeal existed, there was no need to address the justifications for the exceptional sentence.
[13] The majority in Division One's Friederich-Tibbets inexplicably failed to cite to or distinguish our holdings in Pascal, Allert, or Gaines.
[14] While asserting that this court's interpretations of the SRA are unnecessarily harsh, neither Law nor amicus have made the case that our prior holdings are "incorrect and harmful." See State v. Berlin, 133 Wash.2d 541, 547, 947 P.2d 700 (1997); In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970) (stare decisis "requires a clear showing that an established rule is incorrect and harmful before it is abandoned"). Since its enactment, we have regularly and consistently interpreted the SRA, by its terms, to disallow personal characteristics unrelated to the offense committed to be considered as mitigating factors. While Law and amicus disagree with the current standards, it is important to remember that "`it is the function of the legislature and not of the judiciary to alter the sentencing process.'" State v. Ammons, 105 Wash.2d 175, 180, 713 P.2d 719, 718 P.2d 796 (1986) (quoting State v. Monday, 85 Wash.2d 906, 909-10, 540 P.2d 416 (1975)).
[15] See supra at 721.
[16] The dissent's reliance on decisions by other states and the federal courts regarding appropriate "substantial and compelling" reasons is misplaced. See dissent at 733. The cases cited by the dissent that upheld downward departures based on family circumstances all arose out of the federal courts and were thus governed by the United States Sentencing Guidelines (U.S.S.G.). For example, the Ninth Circuit and District Court cases cited by the dissent applied U.S.S.G. § 5H1.6 (2003) which states that "[f]amily ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." These courts then permitted a departure on the finding of "extraordinary" circumstances. See United States v. Leon, 341 F.3d 928, 931-32 (9th Cir.2003); United States v. Newell, 790 F.Supp. 1063, 1064-65 (E.D.Wash.1992). Our SRA contains no provision comparable to U.S.S.G. § 5H1.6. The dissent fails to recognize the distinguishing fact that the U.S.S.G., while disfavoring the consideration of family circumstances, does not prohibit them. As discussed above, our SRA does explicitly prohibit such considerations, see supra at 722-24, and as such, the cases cited by the dissent are not instructive.
[17] These limitations apply with equal force in the context of exceptional sentences.

[A]n exceptional sentence can include total confinement, partial confinement, community service, ... and restitution. Each of these sentence elements is carefully defined by the Act, and they have the same meaning and contain the same limitations when employed in an exceptional sentence as they do when they are part of any other sentence under the Act.
BOERNER, supra, at § 9.22, at 9-60 to 9-61 (emphasis added) (footnotes omitted).
[18] Law's standard range for second degree theft, based on her criminal history, is 22-29 months. CP 10-11, 25.
[19] Again, upon remand for sentencing within the standard range, conversion of confinement to community service will no longer be statutorily permissible under former RCW 9.94A.380. However, since in this case, the State and defendant jointly recommended a DOSA sentence, the issue of whether Law's volunteer work for a 12-step program qualifies as community service continues to be relevant. See former RCW 9.94A.120(6). As part of a DOSA sentence the trial court "shall impose three or more ... [statutory] conditions;" one of which may be the performance of "community service work." Id. at (b)(iv)(E).
[20] The State further asserts that the establishment clause prohibits the trial court from ordering the defendant's participation in NA and as such Law's participation in the program would not be "compulsory service." See former RCW 9.94A.030(7). However, according to the statutory definition of community service it is the service to the community that must be compulsory not the specific activity. Id. Thus, because the trial court did not require Law's participation in the NA program, there was no establishment clause violation. See, e.g., In re Pers. Restraint of Garcia, 106 Wash.App. 625, 630, 24 P.3d 1091 (2001) (holding that there was no violation of the establishment clause because although Alcoholic's Anonymous was an option open to the defendant to fulfill his drug treatment requirement there were also secular alternatives available to him).
[21] Law asks this court, upon invalidation of her exceptional sentence, to remand for further fact finding to determine if any permissible factors exist to warrant an exceptional sentence. However, upon a determination that all the factors supporting an exceptional sentence are insufficient, the proper remedy is for resentencing within the standard range. See, e.g., Fowler, 145 Wash.2d at 411-12, 38 P.3d 335; see also State v. Batista, 116 Wash.2d 777, 793, 808 P.2d 1141 (1991) ("remand for a presumptive sentence is required where all of the reasons said to support the exceptional sentence are held insufficient"); Estrella, 115 Wash.2d at 360, 798 P.2d 289 (after holding factors supporting exceptional sentence following guilty plea insufficient as a matter of law court remands for resentencing within standard range).
[1] This court explicitly rejected factors particular to the defendant in State v. Pascal, 108 Wash.2d 125, 137-38, 736 P.2d 1065 (1987) (rejecting a defendant's opportunity to improve herself and frugal use of state resources as basis for an exceptional sentence). However, the court did not discuss these factors as unrelated to the crime but as already contained within the presumptive sentence ranges. Id.
[2] The first interpretation of this statute as prohibiting factors which don't relate to the crime was in State v. Payne, 45 Wash.App. 528, 533, 726 P.2d 997 (1986).
[3] Webster's Third New International Dictionary 484 (2002) defines "consideration" as "something that is considered as a ground of opinion or action: ... a taking into account." The same dictionary defines "discrimination" as "the act, practice, or an instance of discriminating categorically rather than individually ...: as a: the according of differential treatment to persons of an alien race or religion." Id. at 648.
[4] See LAWS OF 1983, ch. 115, § 5.
[5] In legislative parlance, a "companion bill" is "A bill introduced in the same form in both the House and the Senate." Legislative Glossary at http://www.leg .wa.gov/legis/ glossary/gloss ary. htm# C.
[6] ESSB 3414 was listed as the companion bill to ESHB 297 in the House Bill Report (As Passed Legislature) on ESHB 297, contained in the House Judiciary Committee bill file for ESHB 297 (1983).
[7] The Sentencing Guidelines Commission: A Summary, contained in the Senate Judiciary Committee bill file for ESSB 3414 (1983).
[8] Memorandum from Harry Reinert, Counsel to the House Judiciary Committee, to Representatives Seth Armstrong and Mike Padden (March 29, 1983) (contained in the House Judiciary Committee bill file on ESSB 3414 (1983)).
[9] Id.
[10] A "striking amendment" is an "[a]mendment removing everything after the title and inserting a whole new bill." Legislative Glossary at http://www.leg .wa.gov/legis/ glossary/gloss ary. htm# S.
[11] One might argue that in a determinate sentencing system like Washington's which uses a two-axis sentencing grid, RCW 9.94A.340's general ban on discrimination would be redundant. This is wrong because RCW 9.94A.340 applies not only to the sentencing guidelines but also to the prosecutorial standards contained in the Sentencing Reform Act. And while the standard sentences are governed by a grid, the prosecutorial standards have no such "hard" constraints, and might very well have been subject to "discrimination" based on factors other than the crime committed by the defendant and the defendant's prior criminal history. See LAWS OF 1983, ch. 115, §§ 14-18. These prosecutorial standards were set in place in the same bill containing RCW 9.94A.340. Id. Thus, the legislature's concern with discrimination on factors other than the crime and criminal history with regard to both the guidelines and the prosecutorial standards reinforces the conclusion that the language of RCW 9.94A.340 was meant as a general antidiscrimination bar. Further support is derived from the fact that if RCW 9.94A.340 were interpreted as literally prohibiting consideration of factors other than the crime and criminal history in making charging decisions, the statute would have directly conflicted with former RCW 9.94A.440 (1999), which contained a laundry list of factors often unrelated to the crime or the defendant's criminal history to be considered in deciding whether to prosecute.
[12] The majority's distinction between the "sentencing guidelines" and the "presumptive sentence ranges," majority at 723 n.9, is unavailing since the standard sentence ranges are devised by the Sentencing Guidelines Commission, former RCW 9.94A.040 (1999), and since no definition of "sentencing guidelines" was included in the act. Given that the whole structure of the act was devised around the Sentencing Guidelines Commission developing standard sentence ranges, the most logical conclusion is to treat those terms as synonyms. Similarly, the majority's citation to the BOERNER treatise's discussion of "Constitutionally Impermissible Considerations," see majority at 723 (citing BOERNER, supra, § 9.17 at 9-50), does not support the majority's conclusion since the plain language of the statute applies to the guidelines, not to exceptional sentences applied outside the guidelines. In context, the language of the BOERNER treatise confirms the statute was meant as a general antidiscrimination bar, as after the language quoted by the majority the treatise continues "[r]ace, national origin and religion do not `relate to the crime or the previous record of the defendant, and thus, even if their consideration could be justified by some compelling state interest, the Act itself prohibits their consideration." BOERNER, supra, § 9.17, at 9-50. Boerner's use of the term "sole basis" two sentences earlier is inaccurate given the plain language of the statute and does not comport with the detailed legislative history, cited above. Further, the majority's treatment of the legislative history overlooks the floor statements and legislative memoranda, which clearly indicate that the language of RCW 9.94A.340 was meant as general antidiscrimination language applicable to the guidelines and was not meant to bar consideration of factors external to the crime and criminal history in exceptional sentences departing from the guidelines.
[13] Former RCW 9.94A.120(2) and former RCW 9.94A.390 were combined as current RCW 9.94A.535 in the recodification of the SRA in 2000. LAWS OF 2000, ch. 28, § 8.
[14] The majority claims that reliance on decisions by other states and federal courts regarding appropriate "`substantial and compelling'" reasons is misplaced. Majority at 726 n.16. But the majority fails to show why circumstances that are considered "extraordinary" enough to overcome the federal Sentencing Guidelines' general prohibition against considering family ties and responsibilities are not "substantial and compelling" enough to justify an exceptional sentence under former RCW 9.94A.120(2) (2000), recodified as RCW 9.94A.505(2)(a)(i).
[15] I concur with the majority's holding that Law's work in a 12-step program counts toward any community restitution requirement. Majority at 727-28.